**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  06-61527-CIV-DIMITROULEAS/SELTZER**

| | |
|---|---|
| MARINA BARBOZA, on behalf of herself and as<br>heir of the deceased, Candido Jose Mendez,<br>MAIRA MARLENE MENDEZ BARBOZA,<br>on behalf of herself and as heir of the deceased,<br>Candido Jose Mendez, and<br>RAFAEL MENDEZ BARBOZA,<br>on behalf of himself and as heir of the deceased,<br>Candido Jose Mendez,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DRUMMOND COMPANY, INC., and<br>DRUMMOND LTD.,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT DRUMMOND LTD.'S  MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**
**AND**
**INCORPORATED MEMORANDUM OF LAW**

George Menció, Jr., Adolfo E. Jiménez,
Brett A. Barfield & Martha R. Mora
HOLLAND & KNIGHT LLP
Attorneys for Defendants
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel.: (305) 374-8500
Fax.: (305) 789-7799

Defendant Drummond Ltd. pursuant to Rules 12(b)(1), (2), (3), (5) and (6) of the Federal Rules of Civil Procedure, moves the Court to enter an order dismissing Plaintiffs' First Amended Complaint ("Amended Complaint").

## INTRODUCTION AND BACKGROUND

In their Amended Complaint, Plaintiffs assert a single claim under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), "for providing material support to a foreign terrorist organization resulting in death."  Am. Compl. at 16.  Plaintiffs' Amended Complaint is due to be dismissed because (1) this inherently Colombian action belongs in Colombia under the doctrine of *forum non conveniens*;  and (2) Drummond Ltd. has insufficient contacts with Florida to subject it to jurisdiction here, it was improperly served, and venue does not lie in this District over Drummond Ltd.[1]

Plaintiffs are citizens and residents of the Republic of Colombia.  Am. Compl. ¶¶ 12-14. They are the wife, daughter, and son, respectively, of Candido José Mendez, a deceased Colombian employee of Drummond Ltd. and member of the trade union at Drummond Ltd.'s coal mine.  *Id.*   The alleged events giving rise to this action occurred almost exclusively in Colombia.[2] Plaintiffs allege that on February 18, 2001, Mr. Mendez was followed home from work by a truck "commonly used by paramilitary forces," and that the following morning he was called out of his home by thirty men, some "wearing paramilitary uniforms, some police

---

[1] Simultaneously with this Motion, Defendant Drummond Company, Inc. ("DCI") is also filing a motion to dismiss Plaintiffs' Amended Complaint on the grounds that (1) Plaintiffs have failed to allege a "violation of the law of nations," a jurisdictional prerequisite for a claim under the ATS; and (2) resolution of this case inextricably involves a nonjusticiable political question.  Drummond Ltd. joins in and incorporates by reference DCI's arguments as further grounds for dismissal of the Amended Complaint.

[2] The only participation of DCI alleged in connection with the events set forth in the Complaint is that Garry Drummond, DCI's CEO and COO, is said to have attended a 1997 meeting in Alabama with executives of Drummond Ltd., during which he questioned the Drummond Ltd. executives "about how to deal with the 'union problem.'"  Am. Compl. ¶ 30.  This also is the only alleged event that occurred outside of Colombia.

1

uniforms, and others . . . civilian clothing." *Id.* ¶¶ 33, 34.[3]  The men allegedly asked Mr. Mendez where he worked and, after he responded "at Drummond," the men shot and killed him while his family watched from inside the house.  *Id.* ¶ 35.  Plaintiffs allege that Defendants conspired with the paramilitaries who killed Mendez to further Defendants' business interests.  *Id.* ¶ 19.

## ARGUMENT

### I.    THIS INHERENTLY COLOMBIAN ACTION BELONGS IN COLOMBIA UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

In the event the Court declines to rule on the issue of its subject matter jurisdiction over Plaintiffs' claim, or determines that subject matter jurisdiction exists over the claim, the Court should decline to adjudicate this purely Colombian dispute because "it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum."  *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003).[4]  Dismissal on the basis of *forum non conveniens* is appropriate when "(1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3)

---

[3] This purported connection between the Colombian government and the thirty individuals alleged in 2001 to be paramilitaries who killed Mr. Mendez is beyond attenuated.  Moreover, the 1968 law Plaintiffs cite, "Law 48," in no way created or authorized the creation of paramilitary groups and the Colombian Supreme Court has held that such groups "have no legal backing nor are they organized by the public authority."   Arrieta Decl., D.E. 16, at ¶ 41 (quoting *en banc* op. of the Colombian Supreme Court rendered May  22, 1989).

[4] Defendant DCI's motion to dismiss sets forth the several reasons the Court lacks subject matter jurisdiction. Defendants urge the Court to address that dispositive issue at the threshold.  However, the Supreme Court recently confirmed that district courts have the power to dismiss for *forum non conveniens* without first determining subject matter jurisdiction, *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (March 5, 2007). There, the Court held, in relevant part:

> If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground.  In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded to plaintiff's choice of forum should impel the federal court to dispose of those issues first.  But where subject-matter or personal jurisdiction is difficult to determine, and  *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.

*Id.* at 1194 (internal citations and quotations omitted).  Here, Defendants submit that, based on the *Sinaltrainal* and *Saperstein* opinions from this District, among other authority, the less arduous inquiry for this Court is resolution of the subject matter question.

the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001). These factors weigh overwhelmingly in favor of litigating this case in Colombia, where all the plaintiffs, witnesses and evidence are found.

## A.      Colombia Is An Available And Adequate Alternative Forum

"[T]he burden of establishing whether an alternative forum exists is not a heavy one." *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331-32 (S.D. Fla. 1998). Where a defendant is amenable to process in the other jurisdiction, and will submit to the jurisdiction of the alternative forum, that forum is "available." *Leon*, 251 F.3d at 1311; *Banco Latino*, 17 F. Supp. 2d at 1331-32.

If the Court grants this Motion, Drummond Ltd. and DCI, which has joined in this request, agree to waive any objections to the jurisdiction of the Colombian courts, provided Plaintiffs initiate their suit in Colombia within 180 days of a dismissal by this Court. *See Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1322 (S.D. Fla. 2006) (conditioning dismissal on agreement by defendants to submit to jurisdiction provided suit filed in Brazil within 180 days following dismissal). Where a defendant agrees to submit to the jurisdiction of the alternative forum, any "further inquiry into the foreign jurisdictional law really is needless since it is so easily obviated by the use of the typical conditional dismissal device." *Ford v. Brown*, 319 F.3d 1302, 1311 (11th Cir. 2003).[5]

---

[5]  If Plaintiffs are unable to reinstate their case within a reasonable time in Colombia, through no fault of theirs, and the decision is affirmed by the highest court in Colombia, then this action could be reinstated in this Court. *See Leon*, 251 F.3d at 1316; *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430-31 (11th Cir. 1996); *Da Rocha*, 451 F. Supp. 2d at 1326-27; *Membreno v. Costa Crociere*, 347 F. Supp. 2d 1289, 1298 (S.D. Fla. 2004). Defendants would not, of course, waive their rights to assert proper defenses to the re-filed action in this court, however, such as lack of personal jurisdiction and improper venue, as argued in this Motion.

Colombia also provides an adequate forum.  "An alternative forum is 'presumed adequate unless the plaintiff makes some showing to the contrary.'"  *Da Rocha*, 451 F. Supp. 2d at 1322 (quoting *Leon*, 251 F.3d at 1312)).  "An adequate forum need not be a perfect forum."  *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).  Only in rare circumstances where the remedy offered by the other forum is "clearly unsatisfactory" will the alternative forum be found inadequate.  *Leon*, 251 F.3d at 1311.  Plaintiffs' bare assertion that, "even if there were remedies available to Plaintiffs in Colombia, such remedies are inadequate and would not afford the complete relief available to Plaintiffs by this Complaint,"  Am. Compl. ¶ 8, is insufficient to overcome the presumption of adequacy, and entirely refuted by the declaration of Dr. Carlos Gustavo Arrieta.  (D.E. 16).

Plaintiffs have numerous causes of action and remedies available to them in the Colombian courts.  Arrieta Decl. at ¶ 12.  Plaintiffs may bring, based on the same facts alleged in their Amended Complaint, civil or administrative claims against Defendants and the Colombian government in various Colombian fora and, if such claims are found to be meritorious, obtain damages as relief.  *Id.* at ¶¶ 12, 44.  They may also intervene in any criminal proceeding and seek civil damages from the defendant in the criminal proceeding.  *Id.* at ¶¶ 13-32.  These available proceedings and the remedies they afford constitute substantially more than "no remedy at all." *See Da Rocha*, 451 F. Supp. 2d at 1322; *Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 991 (S.D. Fla. 2004) (Dimitrouleas, J.) ("The Court does not conclude that Colombian Courts are incapable of providing their citizens with justice.").[6]

---

[6] While not dispositive of the adequacy question, courts may consider in the analysis that other courts have also found the same foreign forum to be adequate.  Colombian courts have been found available and adequate in dismissing cases to that jurisdiction on *forum non conveniens* grounds in several cases.  In addition to this Court's decision in *Bautista*, the courts in *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 14 (1st Cir. 2000); and In re *Bridgestone/Firestone, Inc., Tires Prod. Liability Litig.*, 190 F. Supp. 2d 1125, 1134 (S.D. Ind. 2002), found Colombia to be an adequate alternative forum.

Plaintiffs do not allege that they have sought any relief in the courts of Colombia. Instead, relying on NGO reports and one out of date State Department Country Report, they allege in conclusory fashion that they "do not have access to an independent or functioning legal system within Colombia to raise their complaints," and that "[a]ny effort to seek legal redress would be futile because those seeking to challenge official or paramilitary violence . . . are at great risk from retaliation."  Am. Compl. ¶¶ 4-8.  But Plaintiffs' conclusory assertions about Colombia's legal system are insufficient.  ""[E]xtreme amounts of partiality or inefficiency" are required and thus "the argument that the alternative forum is too corrupt to be adequate 'does not enjoy a particularly impressive track record.'"  *Leon*, 251 F.3d at 1310-1312 (quoting *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997)).

In the adequacy analysis, a plaintiff's concern for his or her safety may be given consideration, but only in extreme situations and where the possibility of harm is significant, particularized, and not mere "unsubstantiated speculation."  *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891, 896 (S.D.N.Y. 1981).[7]  The Plaintiffs' concern about "great risk from retaliation" in Colombia, Am. Compl. ¶ 4, is conclusory and merely unsubstantiated speculation.  Plaintiffs, all of whom reside in Colombia, have identified themselves by name in this action and disclosed in filings publicly available on the internet (including in Colombia) that they are the wife, daughter and son of Candido José Mendez.  Am. Compl. ¶¶ 12-15.[8]  *Cf. Iragorri v. Int'l Elevator, Inc.*, 203

---

[7]   While defendants have the ultimate burden of persuasion on all elements of the *forum non conveniens* motion, on aspects of adequacy of the alternative forum such as corruption, delay, and risk of harm, the plaintiff bears the burden to produce "significant evidence" that would render the alternative forum inadequate.  Only then must the defendant "persuade the District Court that the facts are otherwise."  *Leon*, 251 F.3d at 1312-13.  *See also Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, (S.D.N.Y. 2006) ("The proferred alternative forum may be inadequate, for example, where *the plaintiff demonstrates* that he would encounter exceptional . . . barriers in litigating in the other forum, such as the prospect of execution . . . .") (emphasis added).

[8]  There was and would be no greater risk of retaliation from instituting this action in Colombia than in this forum.  Court proceedings in the federal district courts are a matter of public record, and federal dockets are available on the internet.  Plaintiffs' identity is thus easily ascertainable by anyone who reads the Amended Complaint they filed,

F.3d 8, 13-14 (1st Cir. 2000) (affirming finding of insufficient evidence that travel to Colombia

by a former Colombian resident would be perilous).

**B.     The Private Interest Factors Favor Dismissal To Colombia**

Relevant considerations for the private interests of the parties include the plaintiffs'

choice of forum, "the relative ease of access to sources of proof, availability of compulsory

process for attendance of unwilling, and the cost of obtaining the attendance of willing,

witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and

inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Gulf Oil Corp. v.

Gilbert*, 330 U.S. 501, 508 (1947)). *See also Leon*, 251 F.3d at 1314.

**1.     Virtually All Witnesses And Evidence Are Located In Colombia**

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford*,

319 F.3d at 1308.  Plaintiffs allege that Mr. Mendez was murdered in front of his home in

Colombia, and that his family, presumably including Plaintiffs, witnessed the crime.   Am.

Compl. ¶ 35.  Plaintiffs allege that Colombian paramilitaries, acting at the behest of Defendants,

committed the murder in order to further Defendants' business interests by ridding themselves of

the Colombian trade union of which Mr. Mendez was a member.  Am. Compl. ¶¶ 3, 19, 20, 30.

For Plaintiffs to prove and for Defendants to disprove these allegations, the parties will need

testimony from those present at the scene of the events; evidence of Defendants' alleged role in

the activities of the paramilitaries and the Colombian military; and testimony and evidence

concerning the degree to which Defendants exercised control over those who allegedly carried

out the murder, among other issues.   All or substantially all of these material witnesses and

---

including by someone in Colombia, where they reside.  By contrast, dockets and court filings in Colombian judicial
proceedings are not available electronically.  Arrieta Decl. ¶ 19.  Thus, ironically, Plaintiffs likely would have
furthered their interest of minimizing the risk of retaliation by proceeding in Colombia rather than in the United
States.

evidence will be found in Colombia outside the Court's jurisdiction and with no ability to subpoena anyone who witnessed or was involved in the murder. *See Linder v. Calero Portocarrero*, 747 F. Supp. 1452, 1465-66 (S.D. Fla. 1990);[9] *Flore*s, 253 F. Supp. 2d at 541 ("The principal fact witnesses, including plaintiffs and the defendant's operating personnel, are in Peru; many of the witnesses, again including plaintiffs, speak only Spanish; most if not all of the pertinent documents are in Peru, and all documents in the Peruvian governments files and virtually all of the operating documents in the Company's files would be in Spanish . . . ."); *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1520 (11th Cir. 1985) (witnesses in foreign country not subject to process of U.S. court).  In addition, the cost of obtaining the attendance of willing witnesses and of translating documents if this case were tried here would greatly exceed the comparable cost in Colombia, as would the cost for witnesses to attend trial.  *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) (expense of bringing foreign non-party witnesses to the United States favors dismissal).  The private interest factors heavily favor dismissal to Colombia.

### 2.  The Foreign Plaintiffs' Choice of Forum Is Entitled To Minimal Deference

Although a plaintiff's choice of forum generally is entitled to deference, "the presumption that a plaintiff has chosen a sufficiently convenient forum 'weakens' when [as here] the plaintiff

---

[9] Plaintiffs allege that a meeting occurred at DCI's headquarters in Alabama in 1997, four years before the murder of Mr. Mendez, during which certain staff "advocated 'getting rid of the union." Am. Compl. ¶ 30.  But this conduct that allegedly occurred in the United States, and the witnesses and documents associated with it, pales in comparison to the overwhelming contacts of the litigation with Colombia, and evidence and witnesses located there.  *See Turedi*, 460 F. Supp. 2d at 527 (finding evidence in the U.S. connected to allegations that American corporations directed events that resulted in attack on plaintiffs by Turkish police paled in comparison to the "magnitude of the factual and legal links of the case to Turkey").  Moreover, while there may be a handful of relevant witnesses and documents at Defendants' offices in Birmingham, Alabama, those witnesses and documents are as easily transported to Colombia as to Florida.  None of the witnesses and none of the proof are in Florida, where this Court sits.  *See also Da Rocha*, 451 F. Supp. 2d at 1323 (although numerous witnesses and documents were in the United States and Canada, none of them were in the Court's jurisdiction).

is a foreigner litigating far from home." *Leon*, 251 F.3d at 1314-15; *Ford*, 319 F.3d at 1307. *See also Bautista*, 350 F. Supp. 2d at 990 ("a weaker presumption applies when the case is brought by a foreign plaintiff").[10] The presence of claims under the Alien Tort Statute does not affect the result. *See Turedi v. Coca Cola Co.*, 460 F. Supp. 507, 522-23 (S.D.N.Y. 2006) (dismissing to Turkey action presenting ATS claims). "[C]ourts have applied *forum non conveniens* analysis to cases involving claims brought under the [ATS] in essentially the same manner as applied to all other cases." *Aguinda v. Texaco*, 142 F. Supp. 2d 534, 553 (S.D.N.Y. 2001), *aff'd as modified*, 303 F.3d 470 (2d Cir 2002); *see also Flores v. S'ern Peru Copper Corp.*, 253 F. Supp. 2d 510, 529-31 (S.D.N.Y. 2002) (same). Nevertheless, even if the presence of an ATS claim altered the level of deference accorded Plaintiffs' choice of forum, the private and public interest factors tilt so strongly in favor of litigating this case in Colombia that dismissal is warranted.

**C.     Public Interest Factors Favor Dismissal To Colombia**

The Court's analysis of the public interest factors includes, (1) "the sovereigns' interests in deciding the dispute"; (2) "the administrative burdens posed by trial"; and (3) "the need to apply foreign law." *Satz*, 244 F.3d at 1284. All these factors, like the private interest factors, mandate dismissal to Colombia in this case.

**1.     Colombia Has A Great Interest In This Dispute While The United States Has Virtually No Interest**

"[C]ourts necessarily must analyze the interest that the foreign country has in the dispute, an analysis that may raise issues of international comity." *Ford*, 319 F.3d at 1307. "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and

---

[10] One rationale for this rule is that "a plausible likelihood exists that the selection was made for forum-shopping reasons." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). The only connection this action has to Florida is that Plaintiffs' counsel is here. The nonexistent relationship between Plaintiffs' claims and Florida, and the lack of any connection between Plaintiffs and Florida, reflects a plausible likelihood that Plaintiffs (or their lawyer) selected Florida for forum-shopping reasons.

reach rather than in remote parts of the [world] where they can learn of it by report only." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). "[I]t is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil." *Id.* at 1104.

That the Colombian government has a greater interest in this dispute than the United States is hardly debatable. Every fact alleged in the Amended Complaint occurred in Colombia, with the exception of a single meeting alleged to have occurred (with Colombian citizens in attendance) in Alabama, some four years before the death of Mr. Mendez. Am. Compl. ¶ 30. ***Not a single event occurred in Florida.*** Most important, Plaintiffs allege that the Colombian government created and colluded with the Colombian paramilitaries to extinguish labor union activities, and that defendant Drummond Ltd.—in Colombia—took advantage of this supposed collusion to use the paramilitaries to murder one of its Colombian employees. The analysis of Colombia's interest in this case clearly raises significant issues of international comity. In such situations, courts give heavy weight to the foreign forum's substantially greater interest. *Cf. Turedi v. Coca Cola Co.*, 460 F. Supp. 2d at 519-20 ("[T]hese issues fall within the realm of political and public policy questions beyond the proper domain of our courts."); *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) ("[E]ntertaining plaintiffs' claims will involve this Court in sitting in judgment upon the alleged corruption of a nation's entire legal system. If Bolivia's courts do not have a surpassingly greater interest in their own integrity than do the American courts, then the public interest factor is meaningless.").[11]

---

[11] The court in *Eastman Kodak* ultimately denied dismissal because the plaintiff produced substantial and particularized evidence of an imminent threat of harm in Bolivia and corruption in its courts. *Id.* at 1086-87. The plaintiff's representative had previously been imprisoned in Bolivia based on allegedly false accusations made by the defendant to a Bolivian judge who was a relative of the defendant's principal. *Id.*

The Colombian government's interest in this case is heightened by the fact (as alleged by Plaintiffs) that Defendants "utilize the services of the Colombian military . . . to protect its mining facilities, railway lines and U.S. workers in Colombia"; and that Defendants "support a military base on company property by providing the land, as well as electricity, fuel, and equipment."  Am. Compl. ¶ 28.  This relationship between Defendants and the Colombian government further demonstrates Colombia's superior interest in this dispute.  *See Banco Latino*, 17 F. Supp. 2d at 1333 (Venezuela had substantial interest in case where complaint implicated Venezuelan government, Venezuelan banks and companies, and Venezuelan citizens as victims and perpetrators); *Mendes  Junior Int'l Co. v. Banco do Brasil, S.A.*, 15 F. Supp. 2d 332, 340-41 (S.D.N.Y. 1998) (public interest factors strongly favored dismissal to Brazil where contract at issue was in furtherance of Brazilian government's foreign policy and Brazilian government had facilitated relationship).

The issues Plaintiffs raise significantly impact numerous areas critical to the Republic of Colombia.  They touch Colombia's mining industry and the conduct of a private entity operating in this highly regulated area, and affect a major union and its labor relations.  The allegations also reverberate on Colombia's efforts to extinguish the paramilitaries and guerillas and on the laws Colombia has enacted to return the nation to peace.  In contrast, Florida has absolutely no connection to the facts alleged and the United States is connected only because both defendants are Alabama entities.[12]  The public interest factors heavily favor dismissing this purely Colombian dispute to Colombia.

---

[12] *See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 804-05 (7th Cir. 1997) (finding the United States had merely a "passing interest" in dispute where "a foreign plaintiff who was injured in a foreign land filed suit against an American defendant with extensive foreign dealings").

### 2.     The Administrative Burdens Of Litigating This Colombian Dispute In Florida Are Substantial And Unjustified

Where, as here, the United States' interests in a dispute are minimal or non-existent, the administrative burdens will weigh in favor of forum non conveniens dismissal.  *See Chierchia v. Treasure Cay Servs.*, 738 F. Supp. 1386, 1389 (S.D. Fla. 1990) (South Florida would have little interest in litigation by foreign plaintiff against New York defendant when accident occurred abroad).  Relevant considerations include the burden a case will place on the Court's limited judicial resources, tax dollars that will be consumed, and the burden on the jury in a forum that has little, if any, connection to the underlying dispute.  *See Homen v. M/V SCM Tepuy II*, 2006 WL 3626301, at *9 (S.D. Fla. Aug. 2, 2006) ("There is no need for Florida citizens to serve on a jury when Florida has no local interest in the litigation.").  Litigating this case in Florida would impose extremely heavy burdens on this Court, the jury to be summoned, and the parties and witnesses, when the forum has absolutely no nexus to the dispute.  "The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a *forum non conveniens* analysis."  *Da Rocha*, 451 F. Supp. 2d at 1325.

Because the alleged events giving rise to this action almost exclusively occurred in Colombia, Plaintiffs are citizens and residents of Colombia, and the claims have absolutely no connection to Florida, this inherently Colombian action belongs in Colombia.

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER DRUMMOND LTD. AND VENUE IS IMPROPER

Drummond Ltd. lacks sufficient contacts with the State of Florida to support personal jurisdiction here.  Independently, personal jurisdiction does not obtain because service of process on Drummond Ltd. was insufficient.  Finally, venue is improper here.

Drummond Ltd. is an Alabama limited partnership that conducts its business operations in the Republic of Colombia.  Declaration of Curtis Jones, D.E. 16, ¶¶ 2, 3 (hereinafter "Jones

11

Decl. at ¶ ___").  The company is dedicated principally to mining in Colombia pursuant to a concession granted to it by an agency of the Colombian Ministry of Mines.  *Id.* ¶ 3.  It has been operating in Colombia since 1987 and has an extensive integrated operation to extract coal from its mine in the Cesar Province and transport it to its port facilities in Santa Marta, Colombia.  Drummond Ltd. employs approximately 3,700 workers in Colombia.  *Id.* ¶ 5.  Drummond Ltd. has virtually no contacts with Florida and Plaintiffs allege no connection to Florida in the Amended Complaint.

DCI is an Alabama corporation.  Am. Compl. ¶ 16.  Plaintiffs allege that DCI owns, finances and operates the Drummond Ltd. coal mine operation in Colombia, although they acknowledge that Drummond Ltd. "manages the day-to-day operations" of the coal mining business.  Am. Compl. ¶¶ 16-17.

## A. Drummond Ltd.'s Contacts With Florida Are Insufficient To Subject It To The Personal Jurisdiction Of This Court

Plaintiffs bear the burden of demonstrating that jurisdiction is proper.  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  A federal court may exercise personal jurisdiction over a nonresident defendant, such as Drummond Ltd., only to the extent permitted by the forum state's long arm statute, and only if the exercise of the jurisdiction comports with the requirements of due process; i.e., where minimum contacts exist between the defendant and the forum state, and jurisdiction is consistent with traditional notions of fair play and substantial justice.  *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1552 (11th Cir. 1993).  Florida's long-arm statute must be "strictly construed."  *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1314 (S.D. Fla. 2006).[13]  When a defendant challenges personal jurisdiction, the burden of

---

[13] Plaintiffs have filed a cause of action against Drummond Ltd. pursuant to the ATS.  Am. Compl. ¶¶ 2, 38-42.  Because the ATS does not contain a provision for service of process, the Court must examine Florida's long arm statute and Drummond Ltd.'s connection with Florida in determining whether personal jurisdiction exists.  *See Elite*

proving facts showing jurisdiction rests upon the plaintiff. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983).

Plaintiffs' Amended Complaint is devoid of any jurisdictional allegations to support a finding of personal jurisdiction over Drummond Ltd., *see* Am. Compl. ¶¶ 9-11, which in itself mandates dismissal. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) ("In determining whether long-arm jurisdiction is appropriate in a given case . . . it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of [Florida's long-arm] statute" and "sufficient minimum contacts . . . to satisfy due process requirements.")

For this Court to exercise personal jurisdiction over non-resident Drummond Ltd. in this action, either specific or general personal jurisdiction must exist under Florida's long arm statute. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000).[14]   The allegations in the Amended Complaint against Drummond Ltd. do not arise out of any activities of Drummond Ltd. in Florida.[15]   Therefore, the basis of this Court's exercise of personal jurisdiction, if any, must be under the "more stringent" general jurisdiction standard, requiring a showing of "continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Dev. Corp.*, 216 F.3d at 1292; § 48.193(2), Fla. Stat. (2007) ("substantial and not isolated activity").

---

*Aluminum Corp.*, 451 F. Supp. 2d at 1314 ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, as it is here, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process be determined by the state long-arm statute.").

[14] Specific jurisdiction arises out of activities in the forum that are related to the cause of action alleged in the complaint, while general jurisdiction arises from contacts with the forum that are unrelated to the cause of action being litigated. *Id.*

[15] Plaintiffs allege that paramilitaries in Colombia murdered a union trade member in Colombia. There are no allegations in the Complaint that any activities by Drummond Ltd. in Florida are related to the events that occurred in Colombia.

To establish "substantial and not isolated activity" Plaintiffs must demonstrate that Drummond Ltd. "maintained 'continuous and systematic general business contacts' with the forum, so that it can properly be considered to be 'present' in the forum." *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. 1st DCA 1994) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-12 (1984)). "[T]he facts required to assert . . . general jurisdiction must be 'extensive and pervasive.'" *Id.* (citing *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982)).

### 1. Drummond Ltd. Does Not Have The Requisite Minimum Contacts Needed To Warrant Exercising General Personal Jurisdiction.

Drummond Ltd. is an Alabama limited partnership that operates in Colombia. See Jones Decl. ¶¶ 2-4. Drummond Ltd. is not registered with the Florida Secretary of State to transact business in the State of Florida, and does not conduct or solicit any business in the State of Florida. *See id.* ¶¶ 6-7. It does not maintain any business office, agency or agents in the State of Florida,[16] and does not maintain any business records in the State of Florida. *See id.* ¶ 8. Drummond Ltd. does not maintain any bank accounts in the State of Florida and has no telephone listings or mailing address in Florida. *See id.* ¶ 9. Drummond Ltd. does not own or possess any real property in the State of Florida nor does it maintain any inventory or equipment in Florida. *See id.* ¶10.[17] Courts routinely consider these factors, which preclude any finding of

---

[16] Drummond Ltd. employs Holland & Knight LLP including lawyers in its Miami office as counsel for certain purposes. But employment of counsel in the forum does not subject a defendant to general jurisdiction in that state. *See, e.g., Intec USA, LLC v. Engle*, 2005 WL 3619399, *5 (M.D.N.C. Sept. 8, 2005) (rejecting plaintiff's argument for asserting general jurisdiction over defendants based on defendants' retention of counsel in forum); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 WL 1807148, *5 (S.D.N.Y. 2003) (holding that the retention of counsel in forum to assist with certain transactions will not suffice to subject corporation to general jurisdiction in that forum).

[17] There are several engineering employees of Drummond Ltd. who maintain a residence in Florida and travel at Drummond Ltd.'s expense from Florida to Colombia to perform work functions at the mine. *See* Jones Decl. ¶ 11. However, the personal decision of employees of a corporation to maintain a residence in Florida and a corporation providing travel arrangements for these employees does not constitute "continuous and systematic" contacts with the forum. *See Scherer v. Curators of the Univ. of Mo. & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1284 (D.

general jurisdiction over Drummond Ltd. *See, e.g., Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002). Based on Drummond Ltd.'s lack of contacts with Florida, Drummond Ltd. has met its burden of showing that personal jurisdiction over Drummond Ltd. under Florida's long arm statute is not proper.

### 2. Exercising Personal Jurisdiction Over Drummond Ltd. Does Not Comport With Constitutional Due Process Requirements.

The determination whether personal jurisdiction over a nonresident defendant comports with due process is itself a two-pronged inquiry. *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990). First, due process requires that an out-of-state corporation have sufficient minimum contacts with a state before that state may assert personal jurisdiction over such corporation. *Id.* at 1516. Second, the exercise of jurisdiction may "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In this case, Plaintiffs cannot establish the minimum contacts requirement necessary to comply with due process for the same reasons that Drummond Ltd.'s contacts are insufficient under Florida's long arm statute set forth in Part I.A.1. above. *See Baker v. Carnival Corp.*, 2006 WL 3360418, *2 (S.D. Fla. Nov. 20, 2006) (recognizing that the "substantial and not isolated activity" in Florida's long arm statute is the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Due Process Clause of the Fourteenth Amendment); *see also Stubbs v. Wyndham Nassau Resort & Crystal Place Casino*, 447 F.3d 1357, 1363 n.7 (11th Cir. 2006).

---

Kan. 2001) (holding that the mere fact that the defendant located in Missouri employed Kansas residents was insufficient to confer general jurisdiction over defendant in Kansas); *Gelineau v. N.Y. Univ. Hosp.*, 375 F. Supp. 661, 665 (D.N.J. 1974) (holding that some employees residing in New Jersey, in and of itself, does not mean that defendant does business in New Jersey, or wherever else its employees happen to reside); *see also Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. 1st DCA 1994).

The exercise of jurisdiction in this case would certainly offend traditional notions of fair play and substantial justice.   The alleged events giving rise to this action occurred in Colombia, Plaintiffs are citizens and residents of Colombia, and the claims have absolutely no connection to Florida.  *See* Part I.B. above.  *See also Kozial v. Bombardier-Rotax GmbH*, 129 Fed. Appx. 543, 547-48 (11th Cir. 2005) (general jurisdiction in Florida did not comport with traditional notions of fair play and substantial justice where accident occurred in New Jersey, injured party was a New Jersey resident, and had no connection to Florida).  Florida has absolutely no interest in adjudicating this dispute arising from allegations of events that occurred entirely in a foreign country involving foreign parties.  Plaintiffs cannot meet the stringent burden to establish general jurisdiction over Drummond Ltd.

### 3.     DCI's Contacts With Florida Cannot Be Imputed to Drummond Ltd. Based On Either An Agency Or Alter Ego Theory.

Recognizing that Drummond Ltd. has no meaningful contacts with Florida, Plaintiffs advance a novel agency or alter-ego theory by which the Florida contacts of DCI, the alleged principal, would be imputed to Drummond Ltd., the alleged agent.  *See* Am. Compl. ¶ 18 ("Defendant Drummond Ltd. is a wholly-owned, undercapitalized alter ego of [DCI]"); *Id.* at ¶ 19 (referring to Drummond Ltd. as DCI's "alter ego and/or agent").  However, under an agency or alter ego theory, it is an *agent*'s contacts with the forum that are imputed to a *principal*, not vice versa.  *See, e.g., Johnson Enters. Of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998); *Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1357 (S.D. Fla. 2000).  Plaintiffs' theory turns the law of agency on its head.  Nonetheless, even if Plaintiffs' theory was plausible, Drummond Ltd. is neither the agent nor the alter ego of DCI.[18]

---

[18] The majority of the cases analyzing whether entities are in an agency relationship involve a parent and its subsidiary.  *See, e.g., Vega Glen v. Club Mediterranee S.A.*, 359 F. Supp. 2d 1352, 1357 (S.D. Fla. 2005).  These cases teach that "a mere parent-subsidiary corporate relationship . . . does not establish the necessary agency

Plaintiffs have done no more than assert in conclusory fashion that Drummond Ltd. is an agent that operates under the control of DCI.  *See* Am. Compl. ¶¶ 17, 19.  In order to establish an agency relationship in Florida, Plaintiffs must show:  "(1) acknowledgement by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent."  *Meterlogic, Inc.*, 126 F. Supp. 2d at 1354.  For an agency relationship to exist in this case, the amount of control DCI exercises over Drummond Ltd. must be very significant, such that Drummond Ltd. manifests no separate corporate interests of its own and functions solely to achieve the purposes of DCI.  *See Am. Tobacco Co.*, 707 So. 2d at 855; *see also Vega Glen v. Club Mediterranee S.A.*, 359 F. Supp. 2d 1352, 1357 (S.D. Fla. 2005).

The Declaration of Curtis Jones, (D.E. 16), establishes that DCI's control over Drummond Ltd. is far from sufficient to warrant this Court's exercise of personal jurisdiction over Drummond Ltd. based on any contacts between DCI and the State of Florida.  Specifically, Mr. Jones explains, among other things, that Drummond Ltd. is responsible for its own day-to-day activities and maintains separate records and accounts.  Jones Decl. ¶ 12.  This testimony precludes any finding of an agency relationship between Drummond Ltd. and DCI.  *Cf. Enic, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888, 892 (Fla. 5th DCA 2004) (finding plaintiff could not establish sufficient control); *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1344 (S.D. Fla. 2002) (finding no control even where one company conducted its business "under the watchful eye" of the other).[19]

---

relationship." *John Scott, Inc. v. Munford, Inc.*, 670 F. Supp. 344, 345 (S.D. Fla. 1987).  Thus, that Drummond Ltd. may be characterized as an indirect subsidiary of DCI is of no consequence to the Court's jurisdiction over Drummond Ltd.

[19] Drummond Ltd. has thus met its burden of demonstrating that Plaintiffs cannot avail themselves of the existence of an agency relationship to support personal jurisdiction over Drummond Ltd.  *See Meterlogic, Inc.*, 126 F. Supp. 2d at 1352 ("When a nonresident defendant meets this burden [of challenging the plaintiff's allegations by affidavits

Plaintiffs also assert an alternative alter ego theory.  They allege that Drummond Ltd. is a "wholly-owned, undercapitalized alter ego of [DCI] totally under the dominance and control of [DCI]" that "was created and exists purely to serve as an instrumentality for [DCI]."  Am. Compl. ¶ 18.  To succeed on this theory, Plaintiffs must establish not only that Drummond Ltd. is a "mere instrumentality" of DCI but also that DCI engaged in "improper conduct" through its organization or use of Drummond Ltd.  *See Johnson Enters. Of Jacksonville, Inc. v. FPL Group*, Inc., 162 F.3d 1290, 1320 (11th Cir. 1998).

Plaintiffs have only stated bare and conclusory allegations that Drummond Ltd. was created to serve as an instrumentality for DCI "for the sole purpose of operating the Colombian mines for the sole benefit of [DCI]."  Am. Compl. ¶ 17.   However, even if this Court accepts as true that Drummond Ltd. was created for the specific purpose of operating the mines in Colombia, as alleged by Plaintiffs, "there is nothing inherently improper about corporations creating subsidiaries to perform specific functions."  *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001).  Moreover, contrary to Plaintiffs' assertions, the facts, set forth in Mr. Jones' Declaration, support a finding that Drummond Ltd. and DCI are separate and distinct corporate entities with no misuse of the corporate form, as detailed in Part II.A.3, above,[20] and that Drummond Ltd. is not the alter ego of DCI.  Based on the scant allegations

---

or other competent evidence], the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits, testimony or documents.").  *See also Abramson v. The Walt Disney Co.*, 132 Fed. Appx. 273, 276-77 (11th Cir. 2005) (finding no agency relationship where plaintiff failed to contradict affidavit evidence submitted by defendants that alleged agent was responsible for its own day-to-day activities and finances and maintained separate books, records and accounts).

[20] Drummond Ltd. maintains separate records and accounts, is responsible for its own day-to-day activities and maintains control over its own assets and operations which are not shared with DCI.  See Jones Decl. ¶ 10.; *see also Sun Trust Bank*, 184 F. Supp. 2d at 1268 (finding there was insufficient evidence to pierce the corporate veil where there was no evidence of commingling of funds between corporations); *Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So. 2d 1149, 1156 (Fla. 5th DCA 1994) (refusing to pierce the corporate veil where two corporate entities did not commingle funds, maintained separate bank accounts and transacted business in their own names).  Although Drummond Ltd and DCI share a business address in Birmingham and there is some overlap in officers and directors, the law is clear in Florida that even some overlap in officers and employees and the sharing of a business address is

stated in Plaintiffs' Amended Complaint, which are refuted in Mr. Jones' Declaration, Drummond

Ltd. is not subject to the Court's personal jurisdiction under theories of agency or alter ego.

**B.     Venue For Drummond Ltd. In Florida Is Improper Under 28 U.S.C. § 1391**

Plaintiffs err in alleging that venue is proper in this District under 28 U.S.C. §§ 1391(b)

and (c).  *See* Am. Compl. ¶ 11.  Section 1391(b) provides that venue is proper in "(1) a judicial

district where any defendant resides, if all defendants reside in the same State, (2) a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated, or (3) a judicial district in

which any defendant may be found, if there is no district in which the action may otherwise be

brought."  28 U.S.C. § 1391(b).  Drummond Ltd. does not reside in this District.  Jones Decl. ¶¶

6-10.[21]   A "substantial part of the events" giving rise to the Plaintiffs' claims certainly did not

occur in this District – the Amended Complaint itself alleges that all the events occurred in

Colombia.  Am. Compl. ¶¶ 2-3, 33-35.  Finally, the Amended Complaint does not allege that any

---

insufficient to pierce the corporate veil based on an alter ego theory.  *See, e.g.*, *Sun Trust Bank*, 184 F. Supp. 2d at 1268 ("[E]vidence of the sharing of a business address and some overlap of officers and employees between the entities . . . is insufficient to pierce the corporate veil."); *Meterlogic, Inc.*, 126 F. Supp. 2d at 1358 (holding that the overlap of officers is insufficient to support a finding that one corporate entity was the alter ego of another corporate entity).

[21] Section 1391(c) states that for purposes of venue, a defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  *See* 28 U.S.C. § 1391(c).  Drummond Ltd. is a limited liability partnership, which is treated as a corporation for purposes of determining venue.  *See Pippett v. Waterford Dev., LLC*, 166 F. Supp. 2d 233, 238 (E.D. Pa. 2001) (holding that a limited liability company, an unincorporated association similar to a partnership or limited partnership, has no citizenship independent of its members for determining jurisdiction, but for determining venue it is treated as a corporation); *Injection Research Specialists v. Polaris Indus., L.P.*, 759 F. Supp. 1511, 1514 (D. Colo. 1991) (holding that the propriety of venue in suit involving defendant limited partnership was required to be assessed under corporate venue standards under Section 1391(c)); *see also Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 562 (1967).  Under § 1391(c), venue in this action against Drummond Ltd. lies in this District if Drummond Ltd. is subject to personal jurisdiction here.  Drummond Ltd., however, is not a resident of the Southern District of Florida for venue purposes because it is not subject to personal jurisdiction here:  It does not conduct business in the State of Florida and does not have an office in Florida.  Jones Decl. ¶¶  7-8; *see also Algodonera De La Cabezas, S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005) (holding that defendants were residents of the Southern District of Florida because both defendants conducted business through their offices in the Southern District, received correspondence there and were subject to service of process there).  Moreover, subsection (c) is inapplicable because there is another district in which this action may be brought.

property in Florida is the subject of this action.  Because neither Section 1391(b) nor (c) supports a finding of proper venue for this action against Drummond Ltd., dismissal is warranted for improper venue.

## C.    Service of Process on Drummond Ltd. Was Insufficient

Insufficient service of process under Fed. R. Civ. P. 12(b)(5) is an independent ground for dismissal of Plaintiffs' Amended Complaint against Drummond Ltd.  Plaintiffs listed both Drummond Ltd. and DCI on a single summons.  (D.E. 2).  Although a summons may bear the name of multiple defendants, plaintiffs must serve a copy of the original summons on each defendant and identify which defendant the copy applies to.  Fed. R. Civ. P. 4(b); *see also* Advisory Committee's Notes to 1993 Amendments to Fed. R. Civ. P. 4  ("If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified.").  In this case, however, Plaintiffs served only one summons on DCI for both Defendants.  Contrary to the specific requirements of Rule 4(b), Plaintiffs failed to serve Drummond Ltd. with a copy of an original summons and, therefore, this Court should dismiss Plaintiffs' Amended Complaint against Drummond Ltd. based on insufficiency of service of process.[22]

## CONCLUSION

For the foregoing reasons, the Court should enter an order dismissing Plaintiffs' First Amended Complaint.

---

[22] Plaintiffs may contend that service of process on DCI was sufficient service of process on Drummond Ltd. based on an agency theory.  As discussed in detail in Section II.A.3., above, an agency relationship does not exist between Drummond Ltd. and DCI.  Therefore, service of process on DCI was not sufficient service of process on Drummond Ltd. as required under the Federal Rules of Civil Procedure.  *See B.G. Wasden v. Yamaha Motor Co., Ltd.*, 131 F.R.D. 206, 209 (M.D. Fla. 1990) (holding that plaintiff did not show that parent exercised control over subsidiary sufficient to prove an agency relationship and show proper service of process).

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant Drummond Ltd.
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel.: (305) 374-8500
Fax.: (305) 789-7799

By:  s/ Brett A. Barfield
George Menció, Jr. (FBN: 335861)
e-mail: george.mencio@hklaw.com
Adolfo E. Jiménez (FBN: 869295)
e-mail: adolfo.jimenez@hklaw.com
Brett A. Barfield (FBN: 192252)
e-mail: brett.barfield@hklaw.com
Martha R. Mora (FBN: 648205)
e-mail: martha.mora@hklaw.com

**Certificate of Service**

I hereby certify that on April 5, 2007, I electronically filed the foregoing Defendant Drummond Ltd.'s Motion to Dismiss Plaintiffs' Amended Complaint with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Service List:

William J. Wichmann, Esq.
Conrad & Scherer, LLP
P. O. Box 14723
Fort Lauderdale, FL 33302
wjw@conradscherer.com
via electronic filing

# 4464456_v1