### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 06-61527-CIV-DIMITROULEAS/SELTZER

MARINA BARBOZA, on behalf of herself and as
heir of the deceased, Candido Jose Mendez,
MAIRA MARLENE MENDEZ BARBOZA,
on behalf of herself and as heir of
the deceased, Candido Jose Mendez, and
RAFAEL MENDEZ BARBOZA,
on behalf of himself and as heir of
the deceased, Candido Jose Mendez,

                      Plaintiffs,

v.

Drummond Company, Inc., and Drummond Ltd.,
an Alabama limited partnership,

                      Defendants.

_____/

### PLAINTIFFS' OMNIBUS RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

      Plaintiffs Marina Barboza, Maira Marlene Mendez Barboza, and Rafael Mendez

Barboza (hereinafter, "Plaintiffs") hereby respond in opposition to Defendants' Motions

to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law[1] and

in support thereof state as follows:

### BACKGROUND

I.      **THE INSTANT ACTION**

      Plaintiffs, family members of Candido Jose Mendez, a murdered Colombian trade

unionist, initiated the instant matter against Defendants on October 10, 2006.  Defendant

---

[1]  Defendant Drummond Company, Inc., moved to dismiss Plaintiffs' First Amended Complaint on the grounds of failure to establish subject matter jurisdiction and the case involves a nonjusticiable political question.  Defendant Drummond Ltd. moved to dismiss Plaintiffs' First Amended Complaint based on *forum non conveniens* and lack of personal jurisdiction.

Drummond Company, Inc., is an Alabama corporation engaged in the business of mining and shipping of coal.  First Amended Complaint, ¶ 16.  Defendant Drummond Ltd. is an Alabama limited partnership and manages the daily operations of their coal operations in Colombia.  Id. at ¶ 17.  Hereinafter, Drummond Company, Inc., and Drummond Ltd. will be collectively referred to as Drummond Defendants.

Drummond Defendants have an open and established relationship with paramilitaries.  Id. at ¶ 27.  Drummond Defendants utilize this relationship in furtherance of their business interests in Colombia as the paramilitaries, in exchange for supplies, fuel and monetary support would, among other things, terrorize trade union members.  Id. at ¶¶ 27-29.  The trade union members demanded that Drummond Defendants protect them from the paramilitaries.  Id. at ¶ 31.  However, their pleas for help were ignored.

On February 18, 2001, Mr. Mendez boarded a bus owned by Drummond Defendants to work at their mining facility.  First Amended Complaint, ¶ 32.  While boarding the bus to go to the mining facility and re-boarding the bus on his return trip home, Mr. Mendez noticed a truck commonly used by paramilitaries.  Id.  In the early morning hours on February 19, 2001, Mr. Mendez and his family were awoken by the shouting of men outside of their home.  Id. at ¶ 33.  Mr. Mendez exited the family's home as the men threatened to throw a bomb inside their home if he did not exit.  Id.  Fearful of his family's safety, he exited and encountered approximately thirty armed men wearing paramilitary uniforms, police uniforms or civilian clothing.  Id.

The men asked him where he worked and Mr. Mendez told them Drummond.  First Amended Complaint, ¶ 34.  The men then began to drag him away from his home, but Mr. Mendez pleaded that they not take him away as he know he was going to be

killed by the men and he wanted his family to care for his body.  Id.  The men then shot

Mr. Mendez nine times, killing him in front of his horrified family members.

As a result of Drummond Defendants' conduct, Plaintiffs allege a cause of action

under the Alien Tort Claims Act (hereinafter, "ATC") for providing material support to a

known terrorist organization, the United Self-Defense Forces of Colombia.

At this time, there is a parallel action pending in the District Court for the

Northern District of Alabama.  The parallel action, as described below, involves the

Drummond Defendants, the murder of innocent trade unionists, the ATCA, the TVPA,

the political question doctrine, the state action requirement under the ATCA and TVPA,

and other issues currently before this Court.

## II.    ESTATE OF RODRIQUEZ, ET AL. v. DRUMMOND COMPANY, INC., ET AL.

The parallel action, *Estate of Rodriquez, et al. v. Drummond Company, Inc., et al.*

(case no. CV-02-BE-0665), is proceeding against Drummond Defendants in the District

Court for the Northern District of Alabama.  Similar to the instant matter, *Estate of*

*Rodriquez* involves the murder of three trade union members as a direct result of

Drummond Defendants' relationship with the paramilitaries.

On April 14, 2003, the Court published its Opinion on Defendants' Motion to

Dismiss and Plaintiffs' Motion for Leave to Proceed Anonymously.  *Estate of Rodriquez,*

256 F. Supp. 2d 1250 (N.D. Ala. 2003).[2]  The Northern District of Alabama issued

several rulings on matters identical to those pending before this Court.  The Court held:

> (1)    Plaintiffs, by alleging that some of the paramilitaries who
> murdered the plaintiffs were wearing Colombian military uniforms
> and were members of the Colombian military, adequately alleged

---

[2]    *Estate of Rodriquez,* in addition to being brought on behalf of three murdered union members, was also brought on behalf of the deceased plaintiffs' union, Sintramienergetica.  Id. at 1253.

3

state action under the Alien Tort Claims Act.  Id. at 1265;

(2)     Plaintiffs adequately alleged state action for purposes of the Torture Victim Protection Act; Id. at 1268; and,

(3)     The Court deferred ruling on the political question doctrine until the summary judgment stage.  Id. at 1255.

Of note, the Drummond Defendants did not move to dismiss the case based on *forum non conveniens* or lack of personal jurisdiction.

On March 5, 2007, the Northern District entered its Order on Drummond Defendants' joint motion for summary judgment.  This Order, like its previous Opinion on Drummond Defendants' Motion to Dismiss, provides significant guidance on the issues in the instant matter.  A copy of the Court's March 5, 2007, Order is attached as Exhibit "A."   The Court held, *inter alia*: (1) the Plaintiffs could proceed "…for extrajudicial killing under the ATCA under a theory of aiding an [sic] abetting liability[.]" Order, pg. 5; and, (2) "[a]ll other claims and causes of action, including all claims against Drummond Co., Inc. have been dismissed with prejudice." Id.

The political question issue, however, did not reach the summary judgment stage.  During the course of litigation, it was discovered that Drummond Defendants were lobbying, *ex parte*, to have the State Department intervene in the litigation.[3]  Eventually, the State Department submitted a letter (hereinafter, "State Department Letter") to the Court addressing three issues:

(1)  whether the State Department, at the appropriate level, is aware of and/or monitoring the cases listed above.  If so, did the State Department make a prior decision not to intervene in these cases; (2) whether the state department has an opinion (non binding) as to whether continued adjudication of this matter may have an adverse impact on the interests of

---

[3] *See Romero v. Dummond Co., Inc.*, *et al.*, 480 F.3d 1234, 1239 (11th Cir. 2007) ("Unbeknownst to the plaintiffs and the district court, Drummond had been lobbying the Department of State to intervene in the litigation, but its efforts were hindered because it could not share sealed documents with the Department.").

the United States; and, (3) whether Jimmy Rubio Suarez, a Colombian citizen, now residing in Venezuela for whom an arrest warrant allegedly has been issued by Columbia authorities, should be permitted to maintain this action from, and be deposed in a third country.

A copy of the State Department Letter is attached as Exhibit "B."  In response to the first two questions, the Department of State wrote that it "…was aware of the litigation..." and that it "…does not have an opinion at this time as to whether continued adjudication of this matter will have an adverse impact on the foreign policy interests of the United States."  State Department Letter, pg. 2.  Upon information and belief, when Drummond Defendants received this unfavorable opinion from the Department of State, they decided to forego the political question argument in their summary judgment motion.

Finally, another crucial development recently occurred in the action.  As a result of plaintiffs' counsel publishing news on its website of the Court's denial of Drummonds' Motion to Dismiss, the Northern District entered a sweeping, revised protective order requiring plaintiffs' counsel to remove the news from its website and prohibited all counsel from making statements to the public "[c]oncerning…the expected testimony of party witnesses [or] [m]atters that counsel know, or reasonably should know, will be inadmissible at trial, and would if disclosed create a substantial risk of prejudicing an impartial trial."  *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1239 (11th Cir. 2007).   In addition, the Northern District allowed both parties to file motions and accompanying material under seal "[w]ithout making any findings about the need to file documents under seal…."  Id.

Thereafter, plaintiffs moved to submit information to the U.S. State and Justice Departments based on the declaration of an incarcerated Colombian public official.  Id. at 1240.  The Colombian official "…stated that he witnessed the head of Drummond hand a

briefcase of cash to a paramilitary lead in exchange for killing two union leaders." Id. One day after the plaintiffs submitted the declaration, the Court granted Drummond motion to seal the official's declaration. Id. A few days later, the Miami Herald published an article detailing the Colombian official's declaration. Id. The Court ultimately held plaintiffs' counsel in contempt for violating the revised protective order. Id. at 1241.

The plaintiffs then filed an appeal challenging the order of contempt and non-party journalist Stephen Jackson appealed the order sealing documents. Id. at 1238; 1242. The Eleventh Circuit reversed the order of contempt must be vacated and held that the Court should not have sealed the motions and declarations. Id. at 1242; 1245. Importantly, as a result of the Eleventh Circuit's opinion, the Northern District unsealed several documents. Recently, the testimony of Edwin Manuel Guzman, a former member of the Colombian Armed Forces, came to light. A copy of his Declaration is attached as Exhibit "C." Mr. Guzman testified that:

> (1) The chief of Drummond security, Luis Carlos Rodriguez, instructed him that he was not to bother the paramilitaries; Declaration of Edwin Manuel Guzman, ¶ 5;
>
> (2) The paramilitaries were responsible for the killings of trade unionists; Id. at ¶ 6, and,
>
> (3) The paramilitaries and Colombia Armed Forces worked to together to "legalize" the killings of civilians by "plant[ing] guerilla uniforms and weapons on civilians that AUC killed in order to make the killings appear legitimate." Id. at ¶ 3.

In addition, the Declaration of Rafael Garcia, a copy of which is attached as Exhibit "D," was unsealed. Rafael Garcia, a former employee with the Administrative Department of Security, testified that:

(1)    He supplied the names of union leaders to the paramilitaries which they used to carry out in their assassinations of unions leaders; Declaration of Rafael Garcia, ¶ 3; and,

(2)    At a meeting between Drummond and the paramilitaries, he witnessed Augusto Jimenez, Drummond's president of mining operations in Colombia, give a suitcase full of money to a paramilitary representative to assassinate union leaders at Drummond; Id. at ¶ 4.

At this time, trial is set to begin July 9, 2007.

## ARGUMENT

## I.    THE COURT HAS SUBJECT MATTER JURISDICTION AS SPECIFIC ACTS OF TERRORISM ARE VIOLATIONS OF THE LAW OF NATIONS

Two cases are decisive on the issue of whether aiding and abetting a terrorist organization is a violation of the law of nations as required by the Alien Tort Claims Act. The first case is *Saperstein v. Palestinian Authority, et al.*, 2006 WL 3804718 (S.D. Fla. 2006).  In *Saperstein*, the plaintiffs filed suit against the defendants for advocating violence and terrorism against Jewish residents in the Middle East.  Id. at *2.  The key issue before the Court was whether terrorism, generally, was a violation of the law of nations under the Alien Tort Claims Act.  Based on the 1984 decision of *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984), the Court decided that "…terrorism has not reached the status of the violation of the law of nations." Id. at *7.

The second and more closely related case is *Almog v. Arab Bank, et al.*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007).  In *Almog*, the Court, faced with specific factual allegations of terror support, held that "…in light of the universal condemnation of organized and systematic suicide bombings and other murderous acts intended to intimidate or coerce a civilian population, this court finds that such conduct an established norm of international law." Id. at 284.  In reaching this holding, the Court

7

relied heavily on many international treaties, including the International Convention for the Suppression of the Financing of Terrorism, which is also relevant to the instant matter.  In addition, the Court also relied on the United States Congressional expression that:

> It [Congress] was enacting its prohibition on material support to foreign terrorist organizations pursuant to its power under Article I, Section 8, Clause 10, of the U.S. Constitution, to 'define and punish…Offenses against the Law of Nations' and thus appears to have recognized that providing material support to a foreign terrorist organization is a violation of the law of nations.

Id. at 294, *citing,* AEDPA, Pub.L. No. 104-132, § 301(a), 110 Stat. 1214, 1247 (1996).

Here, Plaintiffs alleged specific facts showing Drummond Defendants aided and abetted a terrorist organization in violation of international law.  Drummond Defendants knowingly and intentionally gave monies to the paramilitaries.  Drummond Defendants had a specific purpose for the monies – to eradicate union members.  The paramilitaries engaged in widespread violence, killing and terrorizing numerous Drummond workers, including Candido Jose Mendez.   Furthermore, Drummond Defendants specifically prevented the Colombian military from interfering with their plan to terrorize and kill union workers.   Clearly, these facts go well beyond the generic *Saperstein* facts. Accordingly, Plaintiffs plead a violation of the law of nations as required under the Alien Tort Claims Act.[4]

Finally, the *Saperstein* case is not controlling on this Court as "…a district court is not bound by another district court's decision or even an opinion by another judge of the same district court."  *Liberty/Sanibel II Limited Partnership v. Gettys Group, Inc.,*

---

[4] Due to a simple oversight, Plaintiffs inadvertently failed to include the international treaties and conventions listed in the *Almog* decision in their First Amended Complaint.  Instead, Plaintiffs stated the "law of nations" and included the related United States statutes covering anti-terrorism activities.  Indeed, Plaintiffs can easily correct this oversight by amending their complaint and listing the pertinent statutes.

2007 WL 1109274, *2 (M.D. Fla. 2007), *citing, Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991).

## II.    THIS CASE DOES NOT INVOLVE A NONJUSTICIABLE POLITICAL QUESTION

Drummond Defendants ask this Court to refrain from entertaining this suit on the basis that it involves a nonjusticiable political question.  Drummond Company, Inc.'s Motion to Dismiss, pg. 17.  The thrust of Drummond Defendants' position is that "Plaintiffs ask [for this Court to hold] that the Colombian government in fact created the paramilitaries, and acts in collusion with them…would be directly contrary to the findings of both the State Department and Congress." Id. at 18.  Drummond Defendants then shift the Court's attention to an unrelated case, *Mujica*, and a statement of interest submitted to the California court.  Drummond Defendants do not, however, review the State Department Letter submitted in the Alabama case.

As explained above, the Northern District of Alabama received the State Department Letter concerning the very issue Drummond Defendants are suggesting mandates dismissal here.  Considering the issue of whether the litigation will have an adverse impact on the foreign policy interests, the State Department wrote that it did not have an opinion.  State Department Letter, pg. 2.  In addition, the State Department noted that it had been monitoring the litigation.  Id.  Certainly, if the State Department was concerned the litigation might negatively impact the United States' relationship with Colombia, it would have expressed such concern.  However, the State Department chose not to issue such an opinion despite being aware of the pending cases and *ex parte* lobbying by Drummond Defendants.  *Romero*, 480 F.3d at 1239 ("Unbeknownst to the plaintiffs and the district court, Drummond had been lobbying the Department of State to

intervene in the litigation, but its efforts were hindered because it could not share sealed documents with the Department.").

Moreover, and contrary to Drummond Defendants' main arguments, Plaintiffs are not "…ask[ing] [for this Court to hold] that the Colombian government in fact created the paramilitaries, and acts in collusion with them."  Drummond Company, Inc.'s Motion to Dismiss, pg. 18.  No such finding need be made in order for Plaintiffs to prevail.  Here, the Drummond Defendants and the paramilitaries are the entities which committed the wrongful acts which support Plaintiffs claims.  Besides the non-party, rogue governmental witnesses in this action, the Colombian government is not on trial and its conduct is not pertinent to this litigation.

Furthermore, numerous courts have summarily dismissed the political question doctrine in factual settings similar to the instant matter.  In *Abebe-Jira v. Negewo*, 72 F.3d 844, 846 (11th Cir. 1996), the plaintiffs brought suit under the Alien Tort Claims Act for torture inflicted by the defendant, an official with a military dictatorship in Ethiopia.  Id. at 845-46.  On appeal, the defendant argued that the political question barred plaintiffs' case.  Id. at 846.  The Eleventh Circuit, however, strongly disagreed stating, "…it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."  Id. at 848, *citing, Baker v. Carr*, 369 U.S. 186, 211 (1962).  Further, the Court, citing a previous decision, also stated, "[i]n *Linder v. Portocarrero*, 963 F.2d 332, 337 (11th Cir. 1992), we held that the political question doctrine did not bar a tort action instituted against Nicaraguan contra leaders."  Id.

Finally, even though Drummond Defendants attach the United States' Statement of Interest from *Mujica v. Occidental Petroleum*, Case No. 03-2860-WJR, such an

opinion is not controlling.  *See Environmental Tectonics v. W.S. Kirkpatrick, Inc*., 847 F.2d 1052, 1062 (3d Cir. 1988), *aff'd*, 493 U.S. 400, 404 ("The Department's legal conclusions as to the reach of the act of state doctrine are not controlling on the courts"). Instead, such letters are merely persuasive at best and numerous courts have permitted litigation despite the presence of the State Department's letter.  *See Wiwa v. Royal Dutch Petroleum*, 226 F.3d 88, 105 (2d Cir. 2000); *Presbyterian Church of Sudan*, 2005 WL 2082846 (S.D.N.Y. 2005) (Denying a motion to dismiss on grounds of comity and political question, despite the presence of a U.S. State Department Statement of Interest); *In Re Agent Orange Product Liability Litigation*, 373 F. Supp. 2d 7, 64 (E.D.N.Y. 2005) (Rejecting the U.S. State Department's claim of political question doctrine and stating that an assessment of the merits of an ATS suit related to the spraying of Agent Orange during the Vietnam War should not result in the application of the doctrine).

Accordingly, this case does not involve a nonjusticiable political issue.

**III.      *FORUM NON CONVENIENS***

As noted by Drummond Defendants, dismissal based on *forum non conveniens* is proper where "(1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice."  *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).  As will be shown below, analysis of each factor shows that the balance of convenience does not favor Columbia.[5]

---

[5]   Of note, evidence submitted and attached hereto need not be properly authenticated in order for the court to consider it in analyzing the *forum non conveniens* factors.  *Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1134, 1144 (C.D. Cal. 2005) ("[T]his Court has found no authority indicating that the evidence to be considered for a motion to dismiss for forum non conveniens must be admissible.  In fact, the Court believes the opposition is true.")

However, before Plaintiffs review the *forum non conveniens* factors, it is important to note that although courts may dismiss cases involving Alien Tort claims by way of the *forum non conveniens* doctrine, courts consider that the presence of the Alien Tort Claims Act or the Torture Victim Protection Act.  *See Wiwa,* 226 F.3d at 106 (2d Cir. 2000) ("If in cases of torture in violation of international law our courts exercise their jurisdiction conferred by the 1789 Act only for as long as it takes to dismiss the case for *forum non conveniens*, we will have done little to enforce the standards of the law of nations.").

**A.     Colombia Is Not An Adequate Forum[6]**

Under the adequate forum prong, "[a]n alternative forum is 'adequate' when the 'the parties will not be deprived of all remedies or treated unfairly.'"   *In Re Bridgestone/Firestone, Inc., Tires Prod. Liability Litig.*, 190 F. Supp. 2d 1125, 1129 (S.D. Ind. 2002), *citing, Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). In other cases and factual settings, Colombia may provide an adequate forum for litigants.  For example, in routine personal injury cases where corruption, retaliation and danger are unlikely, Colombia has been held to be an adequate forum.  *See Iragorri v. International Elevator, Inc.*, 203 F.3d 8 (1st Cir. 2000) (Personal injury case involving a deceased who fell down an elevator shaft); *Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 991 (S.D. Fla. 2004) (Personal injury case involving a plaintiff who was injured was while working on a vessel).  However, in the instant matter, trying the case in Colombia will not be safe for Plaintiffs.  The evidence submitted here shows Drummond Defendants utilized the paramilitary's deadly services

---

[6]  Plaintiffs agree with Defendants that Colombia is deemed an available forum as a result of Defendants' willingness to submit itself to the jurisdiction of the Colombian courts.  Thus, the available forum prong will not be analyzed.

and those who speak out against this type corruption in Colombia are the subject of assassination attempts.[7]   The paramilitaries still have a presence Colombia, have the capability to harm Plaintiffs, and are directly implicated in this action.  Under these facts, Colombia is not an adequate forum.[8]

Furthermore, Colombia continues to be one of the most dangerous places in the world for union organizing and workers.[9]   In the Country Reports on Human Rights Practices (2006), which is released on the U.S. Department of State's website, it is noted that "[d]espite a unilateral cease-fire declared by the AUC in 2002 and a nationwide demobilization, renegade paramilitary members committed the following criminal acts and human rights abuses:…killings of human rights workers, journalists, teachers, and **trade unionists**."[10] (emphasis added).  Despite a decrease in total fatalities, the numbers are still alarmingly high as the "…the paramilitary members were responsible for the deaths of 58 civilians from January through June [of 2006]."  Id. at pg. 9.

The documents submitted herein further evidence the instability and corruption in Colombia concerning union organizing, the paramilitaries, and American-based corporations.  Rafael Garcia, who has himself recently been a target for assassination for his involvement, witnessed the President of Drummond Operations in Colombia, Augusto

---

[7]   *See Colombia lawmaker reveals alleged assassination plot,* available at: http://www.cnn.com/2007/WORLD/americas/04/25/colombia.plot.ap/index.html.   This article explains how Rafael Garcia, a key witness in the Alabama cases, was targeted for assassination in Colombia.

[8]   Of note, in *Romero*, *supra*, the Eleventh Circuit made the following comments and about the plaintiffs' complaint and Colombia: "[t]he underlying complaint contains sordid allegations of intrigue, corruption, and assassination in Colombia, 'where the awful is ordinary.'"  *Romero*, 480 F.3d at 1238, *citing*, *Silva v. U.S. Att'y Gen*., 448 F.3d 1229, 1242 (11th Cir. 2006).  As previously stated, Plaintiffs' claims are identical to those *Romero*.

[9]   "Colombia is the world's most dangerous country for union organizing -- more than 800 trade unionists have been slain in the country over the last six years, and almost all remain unsolved."  *Colombian lawmaker reveals alleged assassination plot*, available at: http://www.cnn.com/2007/WORLD/americas/04/25/colombia.plot.ap/index.html.

[10]   Available at: www.state.gov/g/drl/rls/hrrpt/2006/78885.htm.

Jimenez, give money to Rodrigo Tovar Pupo, a paramilitary leader, to commit violence against union workers.  Declaration of Rafael Garcia, at ¶ 4.  Edwin Manuel Guzman, a former member of the Colombia Armed Forces, was instructed by Luis Carlos Rodriguez, chief of Drummond security, to not interfere with the paramilitaries near Drummond Defendants' mining facilities.  Declaration of Edwin Manuel Guzman, at ¶ 3, 5.

Moreover, Drummond Defendants argument that Plaintiffs would have been more secure had they filed in Colombia because their names are disclosed on PACER is misplaced.  Plaintiffs seriously doubt the paramilitaries monitor PACER looking for Colombian nationals filing suit in the United States.  Plaintiffs have a legitimate and well-founded fear of their safety should this matter be tried in Colombia.

Accordingly, Colombia is not an adequate forum and Plaintiffs should not be forced to litigate there.

**B.     The Private Interest Factors Favor Plaintiffs**

When reviewing the private interest factors, the Court must consider:

> [t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive [including] questions as to the enforcibility [sic] of a judgment if one is obtained.

Id. at 1137, *citing*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  As will be shown herein, each of the private interest factors favors Plaintiffs.

**1.     Location of Evidence and Witnesses**

This forum is the most convenient location to litigate this case.  As evidence and witnesses will be located in Alabama, Florida, and Colombia, Florida serves as a convenient mid-way point between the locations.

Importantly, this case is neither document intensive nor does it involve other evidence which cannot easily be transported to this Forum or expeditiously gathered from Alabama and Colombia.[11]  Most of the documents Plaintiffs will seek are in Alabama.  In *Romero*, Drummond Defendants did not raise *forum non conveniens* so relevant evidence is located in Alabama.  Indeed, Plaintiffs here will likely utilize evidence from *Romero* in furtherance of their case.

Furthermore, most witnesses in this matter are in Alabama.  Several of Drummond Defendants' key officials who have knowledge of the events and made key operational decisions reside in Alabama, not in Colombia.  In addition, Plaintiffs experts on liability and damages will be located in this Forum.

Also, deposing Colombian witnesses will not be inconvenient or burden Drummond Defendants.  Drummond Defendants' counsel is located in Florida – the closest location within the United States to Colombia.  Ironically, if this case were tried in Colombia, it would be the most inconvenient forum as the parties would have to travel to Alabama repeatedly to secure the testimony of Drummond Defendants' officials and obtain documentation.

Moreover, both parties have the option of using letters rogatory to secure testimony from Colombia witnesses.  *See In Re Bridgestone/Firestone, Inc., Tires Prod. Liability Litig.*, 190 F. Supp. 2d at 1140 ("[L]etters rogatory, while a potentially cumbersome process, may be used to secure video depositions of Colombian witnesses unwilling to provide testimony in a U.S. trial.").  Plaintiffs already located key

---

[11]   This is not a products liability action where the defective product was either manufactured or is located in Colombia making either viewing or relocation of the evidence difficult.  In addition, viewing the accident scene in this case is not necessary for Plaintiffs' case in chief nor will it assist Drummond Defendants in their defense.

Colombian witnesses, Edwin Manuel Guzman and Rafael Garcia, willing to voluntarily testify in this matter.  Id. at 1151 ("A significant difference also inuring to a retention of jurisdiction in the United States is that for many of the Venezuelan cases, third party witnesses have indicated their willingness to testify, which would reduce the hassle of letters rogatory in some situations.")

Finally, the costs for obtaining willing witnesses do not favor Drummond Defendants.  As recognized in *In Re Bridgestone*:

> In the absence of a clear picture of how many witnesses important to each case are in the United States as compared the number in Colombia, this factor [costs of transporting willing witnesses] does not tilt in either direction.  Furthermore, it does not seem likely that it would be more costly to travel from the United States to Colombia for trial and home again than it would be to travel from Colombia to the United States for trial and home again."

Id. at 1141.

Accordingly, the location of evidence and witnesses favors Plaintiffs.

**2.      Plaintiffs' Choice of Forum Is Entitled To Deference**

Even though the Plaintiffs are not citizens of the United States, their choice of forum must still be given deference.  *See Metito Ltd. v. General Electric Co.*, 2006 WL 3230301, *3 (S.D.N.Y. 2006) ("[T]he fact that plaintiff is foreign does not, as defendant argues, render the forum choice completely undeserving of respect."); *See also, Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) ("[A]ny plaintiff's selection of a forum is entitled to deference…."); *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) ("[S]ome weight must still be given to a foreign plaintiff's choice of forum."); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) ("[L]ess deference is not the same thing as no deference.").

16

### 3. All Other Practical Problems

Under this element, a number of considerations are reviewed, including, enforceability of judgment, ability to implead third party defendants, and expense of translation. *In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 190 F. Supp. 2d at 1142-43. These factors are either neutral or favor Plaintiffs. Enforceability of judgment is neutral as Drummond Defendants agreed to litigate in Colombia. Ability to implead third party defendants is also neutral as there are no other potential defendants in this action which are responsible for Plaintiffs' damages. However, expense of translation favors Plaintiffs as the majority of documents are in English and are located in Alabama.

Accordingly, the balance of these factors favors Plaintiffs.

## C. Public Interest Factors Favor Florida

When reviewing the public interest factors, the Court must consider:

> [t]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. at 1145, *citing*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Here, the public interest factors favor Plaintiffs.

### 1. Court Congestion

The Southern District of Florida is known for processing its cases quickly. In *In Re Bridgestone/Firestone*, the Southern District of Indiana commented, "[b]ecause of the demands made upon it due in part to 'its geographic locations as a gateway to the Caribbean and South America,' the Southern District of Florida 'has been a historical

leader in case processing innovations.'" Id. at 1148, *citing*, 2000 State of the Court, Southern District of Florida, at 7.  Continuing on, the Court also noted, "[t]he Southern District of Florida seems uniquely positioned among United States courts to meet the challenges presented by these cases." Id.  More recently, in the Southern District of Florida's 2003 Annual Report of Court Administrator, titled "Increasing Efficiency: Doing More with Less," the Court Administrator noted that "[d]espite its traditionally heavy trial workload, this Court was once again in 2003 well above the national average in terms of civil case disposition times."  2003 Annual Report, Southern District of Florida, pg. 22.

Accordingly, court congestion does not factor Drummond Defendants.

### 2.      American Interest

This matter is not a Colombian dispute.  Drummond Defendants are United States corporations which, upon information and belief, have substantial contacts with Florida. Courts have routinely stated that the United States has an interest in cases where American corporations injure foreigners abroad.  *See In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 190 F. Supp. 2d at 1146 (Noting that American interest was high in the defendants' conduct with regards to its defective and dangerous products used outside of the United States).

Furthermore, in wake of recent scandals involving American corporations' illegal use of paramilitaries in Colombia, the United States has an additional interest in cases like the instant matter – monitoring American corporations' business ties with terrorist organizations.

In late March of 2007, Chiquita Brands International, an Ohio company, pled

guilty to doing business with the United Self-Defense Forces of Colombia in the United States Court for the District of Columbia.[12]   Chiquita Brands admitted to paying the United Self-Defense Forces of Columbia approximately $1.7 million while conducting business operations in Colombia from 1997 to 2004.   Although Chiquita tried to justify the payments as necessary for its employees' protection, it was no defense as the paramilitaries have been responsible for innumerable killings, trafficking cocaine, and committing other human rights' abuses.[13]   As a result of the criminal charges, Chiquita Brands agreed to pay a $25 million fine.

If the Chiquita Brands scandal was nothing more than Colombia dispute, the United States government would not have got involved.   However, the United States has a compelling interest in monitoring and prosecuting American corporations that conduct business with terrorist organizations.   Given the almost identical facts in the instant to those in Chiquita, the United States has an interest in this matter.

Accordingly, this factor favors Plaintiffs.

### 3.        Avoidance of Unnecessary Problems in Conflict of Laws or Application of Law

Federal courts frequently apply foreign law and the Southern District of Florida is "…no doubt…up to the task of applying the law of Colombia."   *In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 190 F. Supp. 2d at 1148. Potential application of Colombian law is not a burden on the parties or the Court.

Accordingly, this factor does not favor Defendants.

---

[12]   As alleged in the First Amended Complaint, Drummond Defendants also conducted business with the United Self-Defense Forces of Columbia, or "AUC."   *See* First Amended Complaint, ¶¶ 29-31.
[13]   For information on the Chiquita Brands criminal matter, see *Chiquita Fined $25M For Terror Ties*, available at: http://www.cbsnews.com/stories/2007/03/15/terror/main2571969.shtml.

IV.      JURISDICTIONAL DISCOVERY

Defendant Drummond Ltd. claims that it lacks sufficient contacts with Florida to support jurisdiction here.  Defendants Drummond Ltd.'s Motion to Dismiss, pg. 11. Plaintiffs thus request jurisdictional discovery to show this Court has jurisdiction over Defendant Drummond Ltd.

Plaintiffs are entitled to jurisdictional discovery.  In *Nissim Corp. v. Clearplay, Inc.*, 351 F. Supp. 2d 1343 (S.D. Fla. 2004), one of the defendants moved to dismiss the plaintiff's amended complaint for lack of personal jurisdiction.  Id. at 1345.  The Court held that the defendant was subject to the Court's personal jurisdiction based on the evidence in the record.  Id. at 1350.  However, the Court went on to note that even if the plaintiff was unable to state a *prima facie* case, the plaintiff would still be entitled to jurisdictional discovery.  Id.   In support of this rule, the Court noted that to hold otherwise "…would establish a 'rule [that] would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff."  Id. at 1351, *citing, Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1215 (6th Cir. 1989).

Other courts, when presented with similar facts and circumstances as those in the instant matter, have held that plaintiffs are permitted to engage in discovery to support personal jurisdiction.  *See*, *Verde Capital Corp., et al. v. Mickey's Landscaping and Maintenance, Inc.*, 729 F. Supp. 92, 93 (S.D. Fla. 1989) (Court permitted the parties to conduct discovery on the issue of personal jurisdiction); *Sinaltrainal, et al. v. The Coca-Cola Company, et al.*, 2003 WL 1846195, *1 (S.D. Fla. 2003) (Court denied defendant's motion to dismiss for lack of personal jurisdiction until discovery was completed);

*Thompson Trading Ltd. v. Allied Lyons PLC,* 124 F.R.D. 534, 535-36 (D. R.I. 1989) (Noting that it was unfair to require the plaintiff to prove forum contacts at an early stage in the case).

Here, the Court should permit Plaintiffs to engage in limited, jurisdictional discovery to establish that Defendant Drummond Ltd. is subject to this Court's jurisdiction.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court deny Drummond Defendants' Motions to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law, and enter such other relief as the Court deems just and proper.

Dated: May 10, 2007
    Fort Lauderdale, FL

Respectfully submitted,
William J. Wichmann, FBN: 313270
wjw@conradsherer.com
Gregory R. Barthelette, FBN: 791296
gb@conradscherer.com
CONRAD & SCHERER, LLP
633 South Federal Highway, 8th Floor
P.O. Box 14723
Fort Lauderdale, FL  33302
Telephone:  954-462-5500
Facsimile:  954-463-9244
Attorneys for Plaintiffs

By:  s/Gregory R. Barthelette
        William J. Wichmann
        Gregory R. Barthelette

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on May 10, 2007, we electronically filed the foregoing document with the Clerk of Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: s/Gregory R. Barthelette
William J. Wichmann
Gregory R. Barthelette

## **SERVICE LIST**

CASE NO. 06-61527-CIV-DIMITROULEAS/SELTZER

Brett A. Barfield, Esq.
George Mencio, Jr., Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
Email: brett.barfield@hklaw.com
george.mencio@hklaw.com
Counsel for Defendants

William J. Wichmann, Esq.
Conrad & Scherer, LLP
P.O. Box 14723
Fort Lauderdale, FL 33302
Telephone: (954) 462-5500
Facsimile: (954) 463-9244
Email: wjw@conradscherer.com
Counsel for Plaintiffs