**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  06-61527-CIV-DIMITROULEAS/SELTZER**

| | |
|---|---|
| MARINA BARBOZA, on behalf of herself and as | ) |
| heir of the deceased, Candido Jose Mendez, | ) |
| MAIRA MARLENE MENDEZ BARBOZA, | ) |
| on behalf of herself and as heir of the deceased, | ) |
| Candido Jose Mendez, and | ) |
| RAFAEL MENDEZ BARBOZA, | ) |
| on behalf of himself and as heir of the deceased, | ) |
| Candido Jose Mendez, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DRUMMOND COMPANY, INC., and | ) |
| DRUMMOND LTD., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT DRUMMOND COMPANY, INC.'S  MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**
**AND**
**INCORPORATED MEMORANDUM OF LAW**

George Mencló, Jr., Adolfo E. Jiménez,
Brett A. Barfield & Martha R. Mora
HOLLAND & KNIGHT LLP
Attorneys for Defendants
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel.: (305) 374-8500
Fax.: (305) 789-7799

Drummond Company, Inc. ("DCI"), pursuant to Rules 12(b)(1) and (6), and Rule 41(b) of the Federal Rules of Civil Procedure, moves the Court to enter an order dismissing Plaintiffs' Second Amended Complaint with prejudice.

## INTRODUCTION

In flagrant disregard of this Court's Order granting them limited leave to amend, Plaintiffs have failed to identify any established source of international law of which the facts as alleged state a violation to support a claim under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA").  Instead, they have changed their facts in a transparent effort to circumvent the Court's rulings.  Nevertheless, even if the Court were to permit the amendment as presented, the Second Amended Complaint fails to overcome the deficiencies the Court found in the Amended Complaint.

Again exceeding the scope of the Court's permission to amend, Plaintiffs have re-asserted a cause of action they affirmatively represented to the Court and Defendant they had abandoned—a claim under ATCA based on the state action theory that jurisdiction obtains from the involvement of the Colombian military in the murder of Candido José Mendez.  Plaintiffs should be judicially estopped from asserting this claim but, on its merits, it, too, fails.

As an independent ground for dismissal, despite the Court's dismissal of Drummond Ltd. upon finding that Plaintiffs had failed to plead an agency or alter ego relationship between the entities, Plaintiffs assert the identical alter ego and agency allegations as the sole basis for their claims against DCI.  Every material allegation of fact in the Second Amended Complaint addresses conduct allegedly committed by Drummond Ltd.  The Court having already found Plaintiffs' allegations insufficient to establish alter ego or agency, and no actionable conduct by DCI having been alleged, Plaintiffs have failed to state a cause of action against DCI.

1

Plaintiffs' obvious and audacious pleading antics to circumvent the Court's rulings, patent disregard of the Court's Order granting leave to amend, wanton disregard of the case law from this District, and the vexatious pleading they have demonstrated throughout this litigation, justify dismissal of this action with prejudice.

## BACKGROUND

In its Order dismissing Plaintiffs' single-count First Amended Complaint ("Am. Compl."), the Court made the following rulings pertinent to this Motion:  (1) The Court held that it lacked subject matter jurisdiction over Plaintiffs' claims as pleaded because they "asserted only claims of terrorism in general, not acts of terrorism as specifically defined in a recognized norm of customary international law."  D.E. 39 at 22.  However, the Court granted Plaintiffs "leave to file a Second Amended Complaint that identifies specific and established international law of which the facts as alleged state a violation." *Id.* at 23.  (2) The Court held that Plaintiffs failed to satisfy their burden of proving Drummond Ltd. is subject to this Court's personal jurisdiction, and dismissed Drummond Ltd. with prejudice.  The Court rejected Plaintiffs' assertion of an agency or alter ego relationship between the entities such that DCI's contacts with the forum should be imputed to Drummond Ltd. *Id.* at 15-16.[1]

The Court declined to rule on arguments Defendants raised in opposition to Plaintiffs' state action theory of ATCA jurisdiction because Plaintiffs represented in their response memorandum that the conduct of the Colombian government "is not pertinent to this litigation," and, in reliance on that representation, Defendants withdrew those arguments. *Id.* at 16 n.3.

In their Second Amended Complaint, D.E. 40 ("SAC"), Plaintiffs assert two claims under ATCA: Count I for "extrajudicial killing" (as alleged in their original pleading and later

---

[1] The Court declined to dismiss for *forum non conveniens*. *Id.* at 4-12.

2

affirmatively withdrawn), SAC ¶¶ 31-34; and Count II "for providing material support to a foreign terrorist organization resulting in death."  SAC ¶¶ 35-39.

## ARGUMENT

Plaintiffs' third pleading suffers from the identical defects as the two previous ones:  (1) Plaintiffs still fail to allege a "violation of the law of nations"; and (2) even if permitted to revive their abandoned claim, they fail to assert a viable theory of state action (or a legally recognized exception to the state action requirement) to support ATCA jurisdiction.  Both Counts I and II fail to state a claim against DCI because the allegations of actionable conduct, even taken as true, implicate only Drummond Ltd., which the Court has already dismissed.

## I.   PLAINTIFFS HAVE AGAIN FAILED TO IDENTIFY ANY SPECIFIC SOURCE OF INTERNATIONAL LAW TO ESTABLISH A VIOLATION OF THE LAW OF NATIONS BASED ON THE FACTS ALLEGED

Plaintiffs have not and cannot allege a violation of the law of nations under any construction of the facts in either the Amended Complaint or the SAC.  In their Amended Complaint, Plaintiffs attempted to plead an ATCA claim based on their allegations that the Defendants violated international law by providing financial support to a terrorist organization resulting in the death of Mr. Mendez.  *See* Am. Compl. ¶¶ 39-42.  In moving to dismiss, Defendants explained that no source of international law addresses the conduct Plaintiffs alleged. Plaintiffs contended in response that the International Convention for the Suppression of the Financing of Terrorism ("Financing Convention") and Common Article 3 of the Geneva Conventions of 1949 ("Geneva Conventions") are sources of international law that universally condemn the specific conduct Plaintiffs alleged.  D.E. 34 at 8 & n.4.

This Court flatly rejected Plaintiffs' contention.  After thoroughly analyzing *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and its progeny, the Court held that Plaintiffs failed to identify any specific international treaties or conventions which the conduct alleged violated. The Court held that "Article 3 of the Geneva Convention does not apply here because Plaintiffs have not alleged that the alleged tort occurred during the course of an armed conflict."  D.E. 39 at 20.  The Court also held that the Financing Convention is inapplicable because "the facts as alleged do not fall within any of the enumerated prohibited acts specifically set forth in the Financing Convention, . . . Plaintiffs do not allege that the alleged tort occurred during an armed conflict as required under Art. 2(1)(b)[, and] the conduct underlying the alleged violation of international law is not so widespread and systematic as to support a conclusion that the purpose of the Defendants' conduct was 'to intimidate a population . . . .'"  D.E. 39 at 22 (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005)).  However, the Court granted Plaintiffs leave to "file a Second Amended Complaint that ***identifies specific and established international law of which the facts as alleged state a violation***."  *Id.* at 23.[2]

In blatant disregard of the Court's directive, Plaintiffs cite the same international conventions in the SAC which this Court held are inapplicable.  *See* SAC ¶ 11.   In a transparent but futile effort to circumvent the Court's rulings, Plaintiffs have changed their allegations to meet the deficiencies the Court identified, adding conclusory statements that the alleged conduct (1) occurred during an armed conflict, and (2) was done to intimidate a civilian population.[3]

_____

[2] Throughout this Memorandum, all emphasis is supplied unless otherwise noted.

[3] *Compare* Am. Compl. ¶ 39 ("Defendants Drummond Company, Inc. and Drummond Ltd. knowingly provided material support to a known terrorist group by providing money, supplies, access, and other substantial assistance to the paramilitaries that resulted in the murder of Mendez."); *with* SAC ¶ 36 ("Defendant knowingly provided material support to a known terrorist group ***during an armed conflict*** by providing money, supplies, access, and other substantial assistance to the paramilitaries that resulted in the murder of Mendez."); and *compare* Am. Compl. ¶ 2 ("[t]his case involves the systematic intimidation and murder of ***trade unionists***") and ¶ 3 (same), *with* SAC ¶ 2 ("[t]his case involves the intimidation and murder of members of the ***civilian population***").

**A.** **Plaintiffs' Addition Of Conclusory References To "Armed Conflict" Do Not Bring Their Allegations Within The Purview Of The Geneva Conventions or The Financing Convention**

In its Order dismissing Plaintiffs' Amended Complaint, the Court held, "Article 3 of Geneva Convention does not apply here because Plaintiffs have not alleged that the alleged tort occurred during the course of an armed conflict." D.E. 39 at 20. Instead of citing different sources of international law that might apply to their allegations, Plaintiffs have merely added conclusory references in their SAC to conduct "occurring during an armed conflict." But, as this Court observed in its Order, mere reference to "armed conflict" is insufficient to plead conduct occurring "in furtherance of" a purported armed conflict. D.E. 39 at 20 ("Plaintiffs have not alleged that the alleged tort occurred during *the course of* an armed conflict").

As in both prior pleadings, Plaintiffs have again alleged that the wrongful conduct at issue here was in furtherance of Defendant's business interests. *See* SAC ¶¶ 2, 17, 21-25. In the recent case, In re *Sinaltrainal Litigation*, 474 F. Supp. 2d 1273 (S.D. Fla. 2006) ("*Sinaltrainal*"), Judge Martinez had before him allegations identical in all relevant respects to those in the present case.[4] Judge Martinez's opinion thoroughly analyzed the requirement that conduct be "in furtherance of" an alleged armed conflict in order to come within the purview of the Geneva Conventions. *Id.* at 1288-89. His decision dismissing those claims with prejudice turned on the requirement that the alleged conduct occur in furtherance of the purported armed conflict. Judge Martinez found that allegations that the torts occurred in furtherance of business interests were

---

[4] The Plaintiffs in *Sinaltrainal* alleged that defendants "affirmatively acted to benefit from the civil war by making arrangements to have the paramilitaries target their union leaders" to "further their business interests." 474 F. Supp. 2d at 1288. The court held that such allegations do not rise to the level of the universal offenses condemned in *Kadic* to support ATCA jurisdiction. *Id.*

inconsistent with conduct occurring in furtherance of the alleged war hostilities, and thus not within the Conventions' reach.  *Id.*[5]

Judge Martinez's understanding of the narrowness of the war crimes exception is echoed in the recent well-reasoned opinion from Judge Seitz in *Saperstein v. Palestinian Authority*, No. 1:04-cv-20225-PAS, 2006 WL 3804718, at *8 (S.D. Fla. Dec. 22, 2006), which this Court cited with approval.  D.E. 39 at 22.  Judge Seitz summarized the plaintiffs' argument and found it entirely fallacious:

> Plaintiffs . . . characteriz[e] the allegations in the [third amended complaint] as a 'murder of a civilian in the course of an armed conflict,' or a war crime.  In doing this, Plaintiffs are grasping at the *Kadic* decision and attempting to bring the alleged conduct within the language of Common Article 3. . . .  Plaintiffs then make the overreaching leap by stating that if the conduct falls within Common Article 3 and is prohibited thereby, then they have sufficiently alleged a violation of the law of nations for purposes of the [ATCA].  Essentially, Plaintiffs are saying that if they allege a murder of an innocent person during an armed conflict, then they have alleged a per se violation of the law of nations and federal courts have subject matter jurisdiction over the dispute under the [ATCA].  No court has so held.

Judge Seitz concluded that the *Kadic* court "did not make a blanket holding that any alleged violation of Common Article 3 would be sufficient for the purposes of the [ATCA]."  *Id.*[6]  Here, Plaintiffs are not claiming that harm to a civilian population resulted from conduct in the course of the armed conflict, but that harm resulted from violence against an individual for being a member of a labor union—which the Court has already found unavailing under *Aldana.*  D.E. 39

---

[5] Stated differently, Plaintiffs' general allegations that the tortious conduct occurred "during an armed conflict" are contradicted by Plaintiffs' specific allegations that the Mendez murder was part of a business plan to rid La Loma mines of the trade union.  In the face of this contradiction, the Court must ignore the general allegations.  *See TV Signal Co. of Aberdeen v. Am. Tele., & Tele.*, 324 F. Supp. 725, 726 (D.S.D. 1971) ("where both general and specific allegations are made respecting the same matters, the latter will control") (citing 71 C.J.S. Pleading § 42, pp. 112-13 and § 56 pp. 143-44), *overruled on other grounds*, 462 F. 2d 1256.

[6] As an independent ground for dismissing this claim, Plaintiffs have failed to plead with sufficient particularity that the alleged conduct occurred in furtherance of a purported armed conflict.  *See Sinaltrainal*, 474 F. Supp. 2d at 1289 ("A thorough analysis of the operative complaints . . . demonstrates that Plaintiffs have failed to adequately plead facts that could give rise to either war crimes, genocide, or crimes against humanity under the necessarily heightened pleading standard required under the ATCA.").

at 22.  The fact that Plaintiffs' counsel in the instant case was counsel of record in *Sinaltrainal* suggests a wanton disregard for the case law of this District in Plaintiffs' arguments to this Court. Plaintiffs' references to "armed conflict" fail to bring the alleged conduct within the purview of Common Article 3 of the Geneva Conventions or the Financing Convention.

> **B.    Plaintiffs' Addition Of The Conclusory Phrase "To Intimidate A Civilian Population" Does Not Bring Their Allegations Within The Purview Of The Financing Convention**

Likewise, Plaintiffs disingenuous replacement of references to violence against trade union members with references to violence against a civilian population[7] is futile to overcome the deficiencies the Court identified in its Order and bring Plaintiffs' allegations within the purview of the Financing Convention.  The Court's focus in its Order rejecting Plaintiffs' reliance on the Financing Convention was not that trade unionists instead of civilians were the alleged target of the paramilitary's actions, but that "*[T]he conduct underlying the alleged violation of international law is not so widespread and systematic* as to support a conclusion that the purpose of the Defendants' conduct was to 'intimidate a population, or to compel a Government or an international organization to do or to abstain from doing any act.'" D.E. 39 at 22 (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005)). Regardless whether the conduct Plaintiffs allege was aimed at trade union members or civilians, the Court has found that the conduct, even if true, was not sufficiently widespread and systematic to support a conclusion that its purpose was to intimidate a civilian population.[8]  Thus, Plaintiffs'

---

[7] *Compare* D.E. 1, ¶¶ 2-3, D.E. 25 , ¶¶ 2-3, 36 *with* D.E. 40, ¶¶ 2, 29, 37.

[8] Nevertheless, although Plaintiffs deleted many of the references to trade unionists from their Amended Complaint, the undeniable foundation of Plaintiffs' pleading remains the alleged intimidation of trade union members.  *See* SAC ¶ 23 ("Defendant's decision to employ paramilitaries to terrorize and intimidate workers and trade union leaders employed by the company" and "the campaign of violence against the union"); ¶ 24 ("the campaign of violence against workers and trade union members" and "arrange[d] for the AUC to eradicate the union through violent means").  The Court may reject Plaintiffs' general and conclusory allegations of intent to intimidate a civilian population, which these specific allegations contradict.  *See supra* n.5.

continued reliance on the Financing Convention to support a violation of the law of nations is fruitless.  That Convention does not address, much less squarely address, the conduct Plaintiffs allege, *see* D.E. 39 at 21 & n.4, and no other international law does so.  To hold otherwise would contravene the teachings of *Sosa* to the district courts that the door to new offenses under ATCA is barely ajar.  *Sosa*, 542 U.S. at 727-29.  Unable even on this third attempt to establish the threshold requirement for subject matter jurisdiction—a violation of the law of nations—the Court should dismiss Plaintiffs' ATCA claims with prejudice.

## II.   PLAINTIFFS' REVIVAL OF THEIR UNTENABLE STATE ACTION THEORY IS BOTH IMPERMISSIBLE AND FUTILE

Plaintiffs affirmatively represented to Defendants and the Court in motion papers that the actions of the Colombian government are "not pertinent to this litigation."  D.E. 34 at 10.  Defendants relied on this representation in withdrawing their arguments based on failure to plead state action and on the political question doctrine.  D.E. 38 at 3 n.6.  The Court relied on Plaintiffs' representation in declining to rule on those arguments.  D.E. 39 at 16 n.3.  These facts establish that Plaintiffs should be judicially estopped from reviving their state action theory.  Even if Plaintiffs are not estopped to revive this claim, it is meritless.

### A.   Plaintiffs are Judicially Estopped from Taking Inconsistent Positions Regarding State Action

The purpose of the judicial estoppel doctrine "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest" and "from making a mockery of justice" by taking inconsistent positions in a proceeding.  *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1368 (S.D. Fla.  2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  Although the test is flexible and no list of considerations exhaustive, courts generally consider three factors: (1) whether the

present position is "clearly inconsistent" with an earlier-asserted position; (2) whether the party succeeded in persuading the court to accept the earlier position, creating the perception that the court was misled; and (3) whether the party asserting inconsistent positions would derive an unfair advantage over the opposing party.  *Id.* at 1368.  Each of these considerations supports estoppel in this case.

In their original Complaint, Plaintiffs alleged that a symbiotic relationship between the paramilitaries and the Colombian government established state action under a "color of law" theory to create subject matter jurisdiction under ATCA.[9]  Defendants moved to dismiss based in part on the failure of Plaintiffs' state action theory to sustain ATCA jurisdiction.  After Defendants' motion was **fully briefed**, but before the Court ruled on the motion, Plaintiffs voluntarily amended their Complaint.  D.E. 25, 27.  In their Amended Complaint, Plaintiffs' appeared to abandon the state action theory, but because some of the remaining factual allegations suggested the involvement of the Colombian government in the Mendez murder, in an abundance of caution Defendants, in their second motion to dismiss, demonstrated that any such theories were meritless.  *See* D.E. 28 at n.9.  In response, Plaintiffs renounced reliance on any state action theory.  They said to the Court in their response memorandum, "Here, the Drummond Defendants and the paramilitaries are the entities which committed the wrongful acts which support Plaintiffs' claims.  Besides the non-party, rogue governmental witnesses in this action, the Colombian government is not on trial **and its conduct is not pertinent to this litigation**."  D.E. 34 at 10.  Now, Plaintiffs have reasserted their claim for extrajudicial killing under the identical state action theory.  These positions are clearly inconsistent.

---

[9] D.E. 1 ¶ 30 ("the paramilitaries are acting under color of the authority of the government of Colombia"); ¶¶ 21-25. Plaintiffs asserted several other federal and common law claims but later abandoned those in response to Defendants' motion to dismiss.  *See generally* D.E. 1, D.E. 15 and D.E. 25.

Based on Plaintiffs' representation that the conduct of the Colombian government "is not pertinent to this litigation," Defendants withdrew their arguments that Plaintiffs had failed to adequately allege state action and that the case involved a nonjusticiable political question.  D.E. 36 at 3 n.6.  Consequently, the Court declined to address the arguments in its Order dismissing the Amended Complaint.  D.E. 39 at 16 n.3.  Thus, Plaintiffs succeeded in persuading the Court to accept their earlier position and, in reasserting it, have created the perception that the Court was misled.

Defendant DCI is now forced to argue this point for the third time and the Court must rule on it in a separate order.[10]  Thus, Plaintiffs would derive an unfair advantage if the Court permits them to change positions.  An additional consideration that informs the doctrine's application in this context is that Plaintiffs have asserted the state action argument in contravention of the Court's express limitation on the permissible scope of the leave to amend. The Court permitted Plaintiffs to amend only to cite specific sources of international law of which the facts as alleged state a violation, not to add new causes of action or allege new facts or theories.  *See Allapattah Servs., Inc.*, 372 F. Supp. 2d at 1368 (weighing additional considerations and applying judicial estoppel).  Plaintiffs have played fast and loose with Defendants and the Court since this litigation began and all the factors to be considered in applying the doctrine of judicial estoppel favor barring Plaintiffs from resurrecting this claim.

---

[10] Should this Court be inclined to allow Plaintiffs to resurrect this argument, DCI desires to incorporate by reference that portion of its earlier motion to dismiss on the basis of the Political Question Doctrine, D.E. 28 at 17-20.

**B.      Even if Permitted to Revive Their State Action Theory, It is Without Merit**

Even if the Court allows Plaintiffs to revive their novel state action theory, Plaintiffs have failed to plead facts that establish the requisite state action.  Even if the Court were to accept such a theory, Plaintiffs fail to adequately plead state action under any pleading standard.

**1.   Plaintiffs' state action theory impermissibly stretches the boundaries of color of law jurisprudence.**

Count I of Plaintiffs' SAC for extrajudicial killing under ATCA fails as a matter of law to assert a viable theory of state action.  Plaintiffs do not allege any direct involvement by a state actor in the murder of Mendez, but allege that individuals, some of whom belonged to a terrorist organization, committed the crime.  SAC ¶ 27.[11]  To connect the paramilitaries to state actors, Plaintiffs allege that the paramilitaries whom they claim killed Mendez enjoy a "symbiotic relationship" with the Colombian military, *id.* ¶ 22, and thus, the actions of the paramilitaries constitute actions of the Colombian state.  Plaintiffs then posit that Drummond Ltd. conspired with the paramilitaries and, ultimately, that state action attaches to DCI as the alleged alter ego of Drummond Ltd.  SAC ¶ 16.  Reduced to its logical elements, Plaintiffs assert that, because A (a state actor in the form of the Colombian State's Armed Forces) is aligned with B (a non-state actor, the paramilitaries), B is aligned with C (a corporate entity known as Drummond Ltd.), and C is aligned with D (a separate corporate entity known as DCI, alleged to be C's alter ego), D is cloaked with the color of a state actor and hence is liable under ATCA for the conduct of A.  Such an unprecedented and attenuated expansion of ATCA liability would completely vitiate the cautionary warnings posted in *Sosa*.

---

[11] The Eleventh Circuit has closed the door on the notion that the actions of terrorists or other non-governmental armed groups, even when allegedly *tolerated* by the state, are "state actions" sufficient to support ATCA jurisdiction.  *Aldana*, 416 F.3d at 1248 (holding that Guatemala's registration and tolerance of private security forces did not transform those forces' acts into state acts).

The theory is, moreover, simply untenable.  The majority of suits brought under ATCA resonate from a common chord:  they are actions against either named individuals who undoubtedly were themselves state actors, as officers or as agents of foreign political entities, or private parties alleged to have engaged in joint action with acknowledged state actors.[12]  Unable to establish state action under one of these direct or joint action theories, Plaintiffs attempt to stretch ATCA jurisdiction to include "a novel theory that 'color of law' can be imputed from complicity between state entities [i.e. the Colombian state] to paramilitaries, and in turn from paramilitaries to the Defendants in this case."  *Sinaltrainal*, 474 F. Supp. 2d at 1275 n.4.[13]  Such an enlargement of the concept of state action stretches the boundaries of "color of law" jurisprudence, and thus ATCA jurisdiction, beyond any well-defined international law norm.  In *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 791 (D.C. Cir. 1984), Judge Edwards, concurring in the dismissal of an ATCA claim, found that the Palestine Liberation Organization ("PLO") was not a recognized member of the community of nations and thus did not act under color of any state's law.[14]  Judge Edwards declined to extend the definition of "state actor" under the law of nations "absent direction from the Supreme Court."  *Id.* at 792.  That direction came in *Sosa*.

---

[12] *See, e.g., Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) (torture victims sued former chairman of Ethiopian governing unit alleged to have personally supervised and participated in acts of torture); *Sarei v. Rio Tinto, PLC.*, 456 F.3d 1069, 1078-79 (9th Cir. 2006) (defendant mining corporation allegedly participated with the army of Papua New Guinea in attacks on civilians); *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) (defendant corporations alleged to have directed and aided the Nigerian Government's terror attacks).

[13] Plaintiffs in *Sinaltrainal* presented the same theory that Plaintiffs assert here.  Judge Martinez described this theory as "unprecedented," "novel," and "untested in any federal court."  *Id* at 1274-75.  Because Plaintiffs face the added burden here of imputing the actions of Drummond Ltd. to DCI, their state action theory is even weaker than the one rejected in *Sinaltrainal*.

[14] As noted earlier, under Eleventh Circuit precedent, the paramilitaries in this case are likewise not state actors for ATCA jurisdictional analysis. *Aldana*, 416 F.3d at 1248.  *See also Saperstein*, 2006 WL 3804718, at *5 (finding the Palestinian Authority and Palestinian Liberation Organization are "private actors").

*Sosa* held that "whether international law extends the scope of liability for a violation of a given norm" to the defendant being sued is a consideration related to the question of whether the international norm allegedly violated is "sufficiently definite to support a cause of action." 542 U.S. at 732-33 & n.20.  Following *Sosa*'s directive, some federal courts have reexamined the applicability of "color of law" jurisprudence in determining whether to extend liability under ATCA to non-state actors.  Finding that "the 'color of law' jurisprudence developed under § 1983 is not a well developed international norm," these courts have held its application to be an unwarranted expansion of ATCA's reach and inconsistent with the Supreme Court's "repeated calls for judicial restraint."  *Bowoto v. Chevron Corp.*, 2006 WL 2455752, at **6-7 (N.D. Cal. Aug. 22, 2006).  *See also Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 26 (D.D.C. 2005) ("Grafting § 1983 color of law analysis onto international law claims would be an end-run around the accepted principle that most violations of international law can be committed only by states.").[15]

Here, as we  have explained, Drummond Ltd., not DCI, is alleged to have acted jointly with paramilitaries who, like the PLO in *Tel-Oren*, are clearly not state actors.  There is absolutely **no** authority for the unprecedented expansion of color of law analysis, as Plaintiffs urge here, to attach ATCA liability to DCI based on allegations that Drummond Ltd. is alleged to

---

[15] In *Sinaltrainal*, Judge Martinez acknowledged but did not address this line of cases but, instead, concluded that the plaintiffs' allegations were "too conclusory, too vague, and too attenuated to adequately plead a violation of the law of nations."  *Sinaltrainal*, 474 F. Supp. 2d at 1276, 1287.  We acknowledge that the Eleventh Circuit recently stated that courts look to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983" in construing the state action requirement of ATCA.  *Aldana*, 416 F.3d at 1247.  However, the court did not discuss—and it appears the parties did not raise—the effect of *Sosa* on the continuing validity of color of law analysis after *Sosa*.  In fact, in support of the proposition that principles of § 1983 guide the state action inquiry, the court cited *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), a case that predates *Sosa* some nine years.  Moreover, *Aldana* involved the well-recognized variety of vicarious liability, in which a private party is alleged to have acted ***directly*** with a state actor. *See Aldana*, 416 F.3d at 1250 (private company alleged to be liable for the violent acts of police officers and government officials).  *Aldana* thus does not mandate that the Court find here that Plaintiffs have sufficiently pled state action. As Judge Martinez observed, the Eleventh Circuit has not squarely addressed the arguments made in the line of post-*Sosa* cases rejecting color of law jurisprudence as insufficiently defined in international law. *Sinaltrainal*, 474 F. Supp. 2d at 1292 n.26.

have acted jointly with the paramilitaries who, in turn, are alleged to have acted with support from the Colombian military.  There is no justifiable reason for this Court to expand the reach of ATCA beyond the well-defined paradigms recognized in *Sosa* by expanding the definition of a state actor in order to create a new theory of liability under the law of nations.  This Court should decline to accept the Plaintiffs' invitation to fling open the door that *Sosa* left barely ajar.  *Sosa*, 542 U.S. at 727-29.

### 2.   Plaintiffs have failed to adequately plead state action.

When evaluating whether the specific tortious conduct alleged in an ATCA claim constitutes a violation of the law of nations, courts have applied a heightened pleading standard, engaging in a more searching preliminary review of the merits.  *Kadic*, 70 F.3d at 238 ("[I]t is not a sufficient basis for jurisdiction to plead merely a colorable violation of the law of nations."); *Sinaltrainal*, 474 F. Supp. 2d at 1275 n.4 (dismissing action with prejudice for failure to plead state action with sufficient particularity).[16]  In *Sinaltrainal*, Judge Martinez dismissed several complaints with prejudice, finding that allegations tying Colombian paramilitaries to corporate defendants were insufficient to establish federal court jurisdiction.[17]  The court concluded that the plaintiffs' allegations "lack[ed] sufficient specificity" to plead a violation of the law of nations because the plaintiffs failed to tie the actions of the paramilitaries to the

---

[16] The Eleventh Circuit has not directly addressed the applicable pleading standard.  *Aldana* did not expressly discuss the heightened pleading standard applied by the district court in that case, 416 F.3d at 1253, but the court did not disturb the district court's application of a heightened pleading standard.  *See Sinaltrainal*, 474 F. Supp. 2d at 1287 (concluding that a heightened pleading standard applies to ATCA claims and discussing *Aldana*).

[17] *Compare Sinaltrainal*, Gil Compl. ¶ 38 ("The paramilitaries that Mosquera conspired with were . . . functioning openly in Carepa out of the military based . . . and were supported by and received cooperation from the military and police forces in the area such that the paramilitaries were in a symbiotic relationship with the military and police forces in the area.") *with* SAC ¶ 22 ("These AUC paramilitaries are permitted to operate openly in and around the Drummond facilities in Colombia because they are in a cooperative and symbiotic relationship with the regular military . . . .").

corporate defendants."  *Id.* at 1287, 1290.  Plaintiffs here have failed to provide sufficient details regarding the alleged conspiracy to meet even the notice pleading standard.

Plaintiffs' allegations in the SAC are even less specific than the allegations the court in *Sinaltrainal* found to be "too conclusory, too vague, and too attenuated to adequately plead a violation of the law of nations to support subject matter jurisdiction."  *Id.* at 1276.[18]  For example, Plaintiffs here allege that some of the unknown paramilitaries who allegedly killed Mendez wore "*police* uniforms."  SAC ¶ 27.  Yet, nowhere in their SAC do Plaintiffs allege any relationship between the paramilitaries and the Colombian *police*.  While the SAC details a terrible act, allegations of the mechanics of the conspiracy and the relationship between DCI, Drummond Ltd., the paramilitaries, the Colombian military, and Mendez's death are scant, and insufficient to satisfy any pleading standard.  *See generally* SAC ¶¶ 21-29**.**  Plaintiffs' allegations are the type of "murky allegations" that the court in *Sinaltrainal* concluded were insufficient to satisfy the "heightened standard of pleadings [that] is required under the ATCA."  *Id.* at 1296. Plaintiffs have failed to assert even a colorable violation of the law of nations and cannot satisfy even a notice pleading standard, much less the heightened standard Judge Martinez held to apply.

## III.  PLAINTIFFS HAVE FAILED TO ALLEGE ANY ACTIONABLE CONDUCT ALLEGEDLY COMMITTED BY DCI AND THUS HAVE FAILED TO STATE A CAUSE OF ACTION

In order to state a cause of action against DCI, the Court's finding that Plaintiffs failed to plead (or otherwise establish) that the Drummond entities are in an agency or alter ego

---

[18] In *Sinaltrainal* the court noted that in the complaints the "paramilitaries are not identified by name, nor in terms of some specific affiliation (i.e. affiliation with the AUC, etc.), there are no dates or locations regarding the formation of the conspiracy, there is no description of the terms of the conspiracy, and there are no facts whatsoever that indicate that Mosquera was acting as an agent of Bebidas [corporation] when he conspired with the paramilitaries . . . allegations are vague as to the mechanics of how the members of the conspiracy had communicated or otherwise arranged to orchestrate the steps of the conspiracy."  *Id.* at 1293-94.  As to one of the complaints, the court found that the allegations of conspiracy did not, like Plaintiffs' allegations here, "meet a notice pleading standard, much less the heightened standard that this Court has found to apply in the context of the ATCA."  *Id.* at 1299.

relationship required Plaintiffs to allege direct conduct by DCI which, if true, would establish a claim against DCI.  Ignoring the Court's ruling, Plaintiffs merely assert once again in their SAC the identical conclusory allegations from their Amended Complaint that Drummond Ltd. is an alter ego of Defendant, *see* SAC ¶ 15, or that an agency relationship exists between these entities, *see id.* ¶ 16.   But every material allegation of fact is alleged to have been committed by Drummond Ltd., not DCI.  *See id. generally* at ¶¶ 21-25.  *See also* ¶ 24 ("[K]ey members of the ***Drummond Ltd.*** management . . . met with leaders of the AUC during the latter part of 2000 and the beginning of 2001 to arrange for the AUC to eradicate the union through violent means. ***In furtherance of this conspiracy, this management*** made payments to the AUC . . . for the AUC's carrying out this violent destruction of the union.").[19]  The only activity Plaintiffs specifically plead in the SAC which appears to involve DCI is the alleged attendance of Garry Drummond at a single meeting at which issues with the labor union were allegedly discussed.  *See id.* ¶ 23. Clearly this single allegation is insufficient to establish a cause of action against DCI under ATCA (or any other theory).

In a meager attempt to overcome the Court's ruling that determined Plaintiffs failed to plead an agency or alter ego relationship between the Drummond entities, Plaintiffs assert a single, vague allegation that "all of the wrongful acts alleged herein" were committed by paramilitary forces "hired by or retained by employees or agents of ***Drummond Company, Inc. or Drummond Ltd.***"  SAC ¶ 16.  Such vague pleading is impermissible.  *See McHenry v. Renne*, 84 F.3d 1172, 1175-76 (9th Cir. 1996) (allegations that vaguely refer to "defendants" did not

---

[19] Plaintiffs' allegations that DCI owned or operated the La Loma mine (*see, e.g.,* SAC ¶¶ 21-22 ("Defendant utilized the services of the Colombian military to protect ***its*** mining facilities, railway lines and U.S. workers in Colombia" and "Defendant permits known paramilitaries of the AUC to freely enter ***their mining facilities in Colombia***.")) are contradicted by the specific allegations elsewhere that Drummond Ltd. and its management are the alleged actors. *See* SAC ¶ 24.  Moreover, although not necessary to the Court's resolution of this Motion, the uncontested Declaration of Curtis Jones belies any such allegations of ownership or control by DCI.

properly notify individual defendants of the allegations with which they are charged or explain clearly how each defendant is implicated by the allegations; dismissed with prejudice for failure to follow court's orders in amending).   However, this one general and vague allegation is immaterial in the face of the more specific material allegations directed to Drummond Ltd., and in light of this Court's ruling that no agency relationship has been pled.   Specific allegations control over general allegations.  *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (finding "attenuated allegations of control" contradicted by more specific allegations in the Complaint); *Metalmark Northwest, L.L.C. v. Stewart*, 2004 WL 1970146, at \*3 (D. Or. 2004) (rejecting general allegation that defendant "acted outside the course and scope of her employment" in the face of "more specific allegations which contradict the general statement").

Without regard to the Jones Declaration—which undermines any potential showing of agency or alter ego liability—the face of the SAC contains merely general and conclusory allegations of agency and/or alter ego liability.   The Court held that the Amended Complaint failed to plead agency liability.  D.E. 39 at 15 (quoting *Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1354 (S.D. Fla. 2000)).   Plaintiffs SAC does nothing to correct the deficiencies.  *See* SAC ¶¶ 15, 16.

Their alter ego allegations also remain the same, that Drummond Ltd. is a "wholly-owned, undercapitalized alter ego of [DCI] totally under the dominance and control of [DCI]" that "was created and exists purely to serve as an instrumentality for [DCI]."  SAC ¶ 15.  To succeed on this theory, however, Plaintiffs must establish that DCI engaged in "independent wrongdoing" through its organization or use of Drummond Ltd.   *See Johnson Enters. Of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998).  Plaintiffs have stated only the bare conclusion that Drummond Ltd. was created "to serve as an instrumentality

17

for [DCI] to operate the company's coal mine and related facilities in Colombia."  SAC ¶ 15. Even accepting as true that Drummond Ltd. was created for the specific purpose of operating the mines in Colombia, "there is nothing inherently improper about corporations creating subsidiaries to perform specific functions."  *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001).  Because Plaintiffs have failed to allege that DCI committed any tortious conduct, and have failed to plead any alternative theory of liability, they have failed to state a cause of action against DCI and the Court should dismiss the SAC with prejudice.

## IV.    DISMISSAL WITH PREJUDICE IS WARRANTED AT THIS TIME

Plaintiffs' "fast and loose" pleadings before this Court have needlessly multiplied these proceedings, unduly burdened Defendants, and made a mockery of justice.  Dismissal with prejudice is warranted because Plaintiffs have contumaciously disregarded the Court's Order, have already attempted three times to state a viable claim, and any further amendment would be futile.  *See Amnesty Int'l, USA v. Battle*, 484 F. Supp. 2d 1279, 1285 (S.D. Fla. 2007) (holding that "dismissal *with prejudice* is appropriate in view of the fact that [plaintiff] has failed to state a valid claim despite having had three opportunities to do so *vis a vis* three versions of its complaint"); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (leave to amend need not be given where there has been repeated failure to cure deficiencies or when amendment would be futile). [20]

In a specious but transparent effort to circumvent this Court's Order dismissing Plaintiffs' Amended Complaint, Plaintiffs have completely ignored the Court's instructions on amending

---

[20] *See also Estate of Cosio v. Alvarez*, 181 Fed. Appx. 894, 895 (11th Cir. 2006) (holding that district court "correctly determined that Second Amended Complaint failed to allege any viable federal claim, and the court did not abuse its discretion in dismissing it with prejudice, rather than allowing the drafting of a third amended complaint"); *Rogers v. Nacchio*, 2007 WL 2002594, at **6-7 (11th Cir. July 12, 2007) (affirming dismissal with prejudice based on trial court's ruling that amendment would be futile); *U.S. ex rel. Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1197 (S.D. Fla. 2007) (dismissing complaint with prejudice, denying leave to amend on the basis of futility).

their pleading and multiplied these proceedings.  Plaintiffs' third iteration of their complaint revives an untenable theory Plaintiffs affirmatively told DCI and the Court they had abandoned, and re-asserts the same theory of ATCA jurisdiction the Court rejected.  Plaintiffs have far exceeded the scope of permission the Court granted them for amending to state a claim under ATCA.  In their renewed ATCA claim based on the provision of assistance to a terrorist organization, instead of following the Court's instructions to identify specific and established international law of which the facts as alleged stated a violation, *see* D.E. 39 at 23,  Plaintiffs cite the identical sources of international law.  In contravention of the Court's Order, they also changed their facts to circumvent the Court's rulings and asserted a second cause of action, reviving their abandoned claim for extrajudicial killing based on the purported involvement of the Colombian government.  The audacity of these transgressions alone warrants dismissal with prejudice.

From the filing of their initial complaint in October 2006, Plaintiffs have alleged that Mendez was murdered as part of the paramilitaries' campaign against trade unionists.  Now, the exigencies of the moment have led Plaintiffs to modify their theory.  To circumvent the Court's ruling that their allegations did not implicate Common Article 3 of the Geneva Conventions, Plaintiffs allege for the first time that the Mendez murder was part of violence against a civilian population during an armed conflict. *See* Part I above.  In similar fashion, to address the Court's finding that there is no agency relationship between DCI and Drummond Ltd., Plaintiffs assert one vague allegation that "all of the wrongful acts alleged herein" were committed by paramilitary forces "hired by or retained by employees or agents of Drummond Company, Inc. *or* Drummond Ltd."  SAC ¶ 16.  Otherwise, Plaintiffs press the identical conclusory agency and alter ego allegations the Court has already rejected when it dismissed Drummond Ltd. with

prejudice.  D.E. 39 at 15-16.[21]  The needless protraction of this litigation Plaintiffs' conduct has created, combined with their willful disregard of the Court's Order, is strong grounds for denying Plaintiffs any further opportunity to replead their case.  Such gamesmanship makes a mockery of the judicial process.

Moreover, it is obvious that any further opportunities to amend would be futile.  Plaintiffs have had three opportunities to state a viable theory of state action and have failed on each occasion.  Nor can Plaintiffs identify a single source of international law that squarely addresses the conduct they allege in support of their alternative theory of ATCA liability.   The Court should dismiss the Second Amended Complaint with prejudice.

**CONCLUSION**

The Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant Drummond Co., Inc.
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel.: (305) 374-8500
Fax.: (305) 789-7799

By:  s/ Brett A. Barfield
George Mencló, Jr. (FBN: 335861)
e-mail: george.mencio@hklaw.com
Adolfo E. Jiménez (FBN: 869295)
e-mail: adolfo.jimenez@hklaw.com
Brett A. Barfield (FBN: 192252)
e-mail: brett.barfield@hklaw.com
Martha R. Mora (FBN: 648205)
e-mail: martha.mora@hklaw.com

---

[21] Moreover, the Declaration of Curtis Jones, which attests to the absence of any agency or alter ego relationship between DCI and Drummond Ltd., remains to this day uncontested.  D.E. 16-2 at ¶12; *see also* D.E. 39 at 14-16 (noting in dismissing Drummond Ltd. with prejudice that Plaintiffs failed to rebut the Jones declaration and never timely requested discovery on the issue).

**Certificate of Service**

I hereby certify that on August 29, 2007, I electronically filed the foregoing Defendant Drummond Company, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Service List:

William J. Wichmann, Esq.
Conrad & Scherer, LLP
P. O. Box 14723
Fort Lauderdale, FL 33302
wjw@conradscherer.com
via electronic filing

# 4704132_v4

21